ADMINISTRATOR, FEDERAL AVIATION ADMIN-
ISTRATION, ET AL. *v.* ROBERTSON ET AL.

No. 74–450.   Argued April 15, 1975—Decided June 24, 1975

*Deputy Solicitor General Friedman* argued the cause for petitioners. On the brief were *Solicitor General Bork, Assistant Attorney General Hills, Allan Abbot Tuttle, Leonard Schaitman,* and *Thomas G. Wilson.*

*Alan B. Morrison* argued the cause and filed a brief for respondents.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari[1] in this case in order to determine whether Exemption 3 of the Freedom of Information Act, 5 U. S. C. § 552 (b)(3),[2] permits nondisclosure

---

[1] 419 U. S. 1067 (1974).

[2] The Act was amended in 1974, Pub. L. 93–502, 88 Stat. 1561, to read in pertinent part:

to respondents of certain reports in the files of the Federal Aviation Administration. This exemption provides that material need not be disclosed if "specifically exempted from disclosure by statute." The reports are known as Systems Worthiness Analysis Program (SWAP) Reports.[3] They consist of analyses made by representatives of the FAA concerning the operation and maintenance performance of commercial airlines. Oversight and regulation of air travel safety is the responsibility of the FAA, § 601 of the Federal Aviation Act of 1958, 72 Stat. 775, as amended, 49 U. S. C. § 1421. The FAA claims the documents are protected from disclosure

"(a) Each agency shall make available to the public information as follows:

.        .        .        .        .

"(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U. S. C. § 552 (a) (3) (1970 ed., Supp. IV).

Exemption 3, which was not amended in 1974, is provided by 5 U. S. C. § 552 (b) (3), which reads as follows:

"(b) This section does not apply to matters that are—

.        .        .        .        .

"(3) specifically exempted from disclosure by statute."

Prior to the 1974 amendments, § 552 (a) (3) read, in pertinent part: "Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. . . ." 5 U. S. C. § 552 (a) (3).

[3] The SWAP is set forth in the Federal Aviation Administration's Systemworthiness Analysis Program Handbook, 8000.3B (reprinted Nov. 1970) (App. 44–111). A revised version of the SWAP Handbook is contained in FAA Order 8000.3C, Apr. 14, 1972. (With subsequent changes.) See also affidavit of FAA Administrator Shaffer, App. 40.

by virtue of § 1104 of the Federal Aviation Act of 1958, 49 U. S. C. § 1504.[4]

The facts of the case, in its present posture,[5] are quite simple. During the summer of 1970, in connection with a study of airline safety being conducted by them, the respondents, associated with the Center for the Study of Responsive Law, requested that the FAA make available certain SWAP Reports. The FAA declined to produce the documents. In accordance with established procedures adopted by the FAA, the respondents then filed timely notice of administrative appeal in August 1970. Several months later, while this administrative appeal was pending, the Air Transport Association, on behalf of its air-

---

[4] Section 1104 provides:

"Any person may make written objection to the public disclosure of information contained in any application, report, or document filed pursuant to the provisions of this chapter or of information obtained by the Board or the Administrator, pursuant to the provisions of this chapter, stating the grounds for such objection. Whenever such objection is made, the Board or Administrator shall order such information withheld from public disclosure when, in their judgment, a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public. The Board or Administrator shall be responsible for classified information in accordance with appropriate law: *Provided,* That nothing in this section shall authorize the withholding of information by the Board or Administrator from the duly authorized committees of the Congress."

[5] The respondents had also sought disclosure of Mechanical Reliability Reports, which are daily reports of mechanical malfunctions submitted to the FAA by the aircraft companies. On January 11, 1972, the Administrator determined that he would permit the disclosure of such documents received after April 18, 1972. The District Court's subsequent order in this case, on November 8, 1972, ordered disclosure of these documents received prior to that date. The Administrator has not contested this aspect of the District Court's order either on appeal to the Court of Appeals or in his petition for writ of certiorari to this Court.

line members, requested that the FAA make no public disclosure of the SWAP Reports. The Association noted that, in a prior memorandum of its own staff, the FAA had pointed out that " '[t]he SWAP Program requires a cooperative effort on both the part of the company and FAA if it is to work effectively,' " and argued that "[t]he present practice of non-public submissions, which includes even tentative findings and opinions as well as certain factual material, encourages a spirit of openness on the part of airline management which is vital to the promotion of aviation safety—the paramount consideration of airlines and government alike in this area." In February 1971, the FAA formally denied respondents' request for the SWAP Reports. It took the position that the reports are exempt from public disclosure under 5 U. S. C. § 552 (b)(3), the section at issue here. As previously noted, that section provides that such material need not be disclosed under the Freedom of Information Act when the material is specifically exempted from disclosure by statute. The FAA noted that § 1104 of the Federal Aviation Act of 1958 permits the Administrator to withhold information, public disclosure of which, in his judgment, would adversely affect the interests of the objecting party and is not required to be disclosed in the interest of the public. The FAA also based its denial of these data on the exemption for intra-agency memoranda (5 U. S. C. § 552 (b)(5)), the exemption for investigatory files compiled for law enforcement purposes (§ 552 (b)(7)), and, finally, the exemption for documentation containing trade secrets and commercial or financial information of a privileged or confidential nature (§ 552 (b)(4)). The FAA's answer also explained its view of the need for confidentiality in SWAP Reports:

> "The effectiveness of the in-depth analysis that is the essence of SWAP team investigation depends, to

a great extent, upon the full, frank and open cooperation of the operator himself during the inspection period. His assurance by the FAA that the resulting recommendations are in the interest of safety and operational efficiency and will not be disclosed to the public are the major incentives impelling the operator to hide nothing and to grant free access to procedures, system of operation, facilities, personnel, as well as management and operational records in order to exhibit his normal course of operations to the SWAP inspectors."

Respondents then sued in the District Court, seeking, *inter alia*, the requested documents. The District Court held that "the documents sought by plaintiffs . . . are, as a matter of law, public and non-exempt within the meaning of 5 United States Code [§] 552, and plaintiffs are entitled to judgment . . . as a matter of law."

A divided Court of Appeals affirmed the judgment of the District Court "insofar as appellants rely upon Exemption (3)," but remanded the case for consideration of other exemptions which the FAA might wish to assert. 162 U. S. App. D. C. 298, 498 F. 2d 1031 (1974). Examining first what it felt was the ordinary meaning of the language of Exemption 3, the Court of Appeals held that its language required the exempting statute relied on to specify or categorize the particular documents it authorizes to be withheld. Because § 1104 delegated "broad discretionary authority" under a "public interest" standard, it was held not within the scope of Exemption 3. The Court of Appeals distinguished this Court's decision in *EPA* v. *Mink,* 410 U. S. 73 (1973), on the ground that the exemption involved in that case was construed to be a specific reference by Congress to a definite class of documents, namely those that must be kept secret " 'in the

interest of the national defense or foreign policy,' " 162 U. S. App. D. C., at 300, 498 F. 2d, at 1033. The Court of Appeals read the Act as providing a comprehensive guide to congressional intent. One of the Act's major purposes was seen as intending to eliminate what it characterized as vague phrases such as "in the public interest" or "for good cause" as a basis for withholding information. Under these circumstances, the court concluded that § 1104 cannot be considered a specific exemption by statute within the meaning of Exemption 3 of the Freedom of Information Act.

This case involves no constitutional claims, no issues regarding the nature or scope of "executive privilege," but simply the scope and meaning of one of the exemptions of the Freedom of Information Act, 5 U. S. C. § 552. *EPA* v. *Mink, supra,* at 94 (STEWART, J., concurring). The Act has two aspects. In one, it seeks to open public records to greater public access; in the other, it seeks to preserve the confidentiality undeniably essential in certain areas of Government operations. It is axiomatic that all parts of an Act "if at all possible, are to be given effect." *Weinberger* v. *Hynson, Westcott & Dunning,* 412 U. S. 609, 633 (1973). Accord, *Kokoszka* v. *Belford,* 417 U. S. 642, 650 (1974).

We have construed the Freedom of Information Act recently in *NLRB* v. *Sears, Roebuck & Co.,* 421 U. S. 132 (1975); *Renegotiation Board* v. *Grumman Aircraft Engineering Corp.,* 421 U. S. 168 (1975); *Renegotiation Board* v. *Bannercraft Clothing Co.,* 415 U. S. 1 (1974); *EPA* v. *Mink, supra.* In *Mink,* the Court set out the general nature and purpose of the Act, recognizing, as did the Senate committee report, that it is not " 'an easy task to balance the opposing interests . . .' " and " 'provid[e] a workable formula which encompasses, balances,

and protects all interests . . . .' " 410 U. S., at 80, quoting from S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965). Nothing in the Act or its legislative history gives any intimation that all information in all agencies and in all circumstances is to be open to public inspection. Because it considered the public disclosure section of the Administrative Procedure Act, 60 Stat. 238, 5 U. S. C. § 1002 (1964 ed.), inadequate, Congress sought to permit access to certain kinds of official information which it thought had unnecessarily been withheld and, by the creation of nine explicitly exclusive exemptions, to provide a more workable and balanced formula that would make available information that ought to be public and, at the same time, protect certain information where confidentiality was necessary to protect legitimate governmental functions that would be impaired by disclosure. The exemptions provided by the Act, one of which we deal with here, represent the congressional judgment as to certain kinds of "information that the Executive Branch must have the option to keep confidential, if it so chooses," 410 U. S., at 80. The language of Exemption 3 contains no "built-in" standard as in the case of some of the other exemptions. The variety of constructions given its language by the Courts of Appeals,[6] is ample evidence

---

[6] In *Evans* v. *Department of Transportation*, 446 F. 2d 821 (CA5 1971), the court held that 49 U. S. C. § 1504, the FAA statute in question here, was within the scope of Exemption 3. 446 F. 2d, at 824. The same Court of Appeals, however, in an unpublished opinion, *Serchuk* v. *Weinberger*, affirmance reported at 493 F. 2d 663 (1974), followed the Third Circuit in *Stretch* v. *Weinberger*, 495 F. 2d 639 (1974), in holding that 53 Stat. 1398, as amended, 42 U. S. C. § 1306 (a)—requiring the confidentiality of all material obtained by the Secretary of Health, Education, and Welfare "except as the Secretary . . . may by regulations prescribe"—was not within the scope of Exemption 3 because it neither "identifies some class or category

that the relevant portions of the exemption are unclear and ambiguous, compelling resort to the legislative history. See *United States* v. *Donruss Co.,* 393 U. S. 297, 303 (1969). Cf. *United States* v. *Oregon,* 366 U. S. 643, 648 (1961).

That history must be read in light of the legislation in existence when the Act was passed; that history reveals "clear evidence that Congress was aware of the necessity to deal expressly with inconsistent laws." *Regional Rail Reorganization Act Cases,* 419 U. S. 102, 129 (1974). Congress was aware, as it undertook a painstaking review, during several sessions, of the right of the public to information concerning the public business; it was aware that it was acting not only against the backdrop of the 1946 Administrative Procedure Act, *supra,* but also on the basis of a significant number of earlier congressional decisions that confidentiality was essential in certain departments and agencies in order to protect the public interest. No distinction seems to have been made on

of items that Congress considers appropriate for exemption," 495 F. 2d, at 640, nor at least "sets out legislatively prescribed standards of guidelines that the Secretary must follow in determining what matter shall be exempted from disclosure." *Ibid.* Accord, *Schechter* v. *Weinberger,* 165 U. S. App. D. C. 236, 238, 506 F. 2d 1275, 1277 (1974) (MacKinnon, J., dissenting) (citing his prior dissenting opinion in the same case, 162 U. S. App. D. C. 282, 498 F. 2d 1015 (1974)). In *California* v. *Weinberger,* 505 F. 2d 767 (1974), the Ninth Circuit reached a contrary result in regard to 42 U. S. C. § 1306 (a) on the ground that the general nondisclosure mandate constituted "words of congressional exemption," 505 F. 2d, at 768, and thus the material was "specifically exempted . . . by statute." The Secretary merely had the authority "to relax the absolute prohibition established by Congress." *Ibid.* Cf. *Sears* v. *Gottschalk,* 502 F. 2d 122 (CA4 1974), finding sufficient specificity in the term "[a]pplications for patents" of 35 U. S. C. § 122 and in Rules 14 (a) and (b) of the Patent Office to satisfy even the objections of the *Stretch* court and to bring 35 U. S. C. § 122 within the scope of Exemption 3.

the basis of the standards articulated in the exempting statute or on the degree of discretion which it vested in a particular Government officer. When the continued vitality of these specialized exempting statutes was raised by the views of various agencies,[7] the members of the committee consistently expressed the clear intention that these statutes would remain unaffected by the new Act. During the 1963 hearings, for example, Senator Long, Chairman of the Senate Subcommittee stated: "It should be made clear that this bill in no way limits statutes specifically written with the congressional intent of curtailing the flow of information as a supplement necessary to the proper functioning of certain agencies."[8] Indeed, some provisions[9] of bills which were not enacted could well have been construed as repealing all earlier legislation,[10] but such provisions were not included in the bill that was finally enacted. More specifically, when the Civil Aeronautics Board brought § 1104 to the attention of both the House and Senate hearings of 1965, and expressed the agency interpretation that the provision was encompassed within Exemption 3,[11] no question was

---

[7] Note, Comments on Proposed Amendments to Section 3 of the Administrative Procedure Act: The Freedom of Information Bill, 40 Notre Dame Law. 417, 453 n. 254 (1965).

[8] Hearings on S. 1666 before the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, 88th Cong., 1st Sess., 6 (1963) (statement of Senator Long, Chairman of the Subcommittee and sponsor of § 1666, which was not changed, in pertinent part, in the final enactment). See also Hearings on H. R. 5012 et al. before a Subcommittee of the House Committee on Government Operations, 89th Cong., 1st Sess., 14 (1965) (statement of Rep. Moss, Subcommittee Chairman).

[9] Id., at 3: "All laws or part of laws inconsistent with the amendment made by the first section of this Act are hereby repealed."

[10] Id., at 14, 20, 53.

[11] Id., at 237. See also Hearings on S. 1160 et al. before the Subcommittee on Administrative Practice and Procedure of the Senate

raised or challenge made to the agency view of the impact of that exemption. When the House Committee on Government Operations focused on Exemption 3, it took note that there are "nearly 100 statutes or parts of statutes which restrict public access to specific Government records. *These would not be modified* by the public records provisions of S. 1160." H. R. Rep. No. 1497, 89th Cong., 2d Sess., 10 (1966). (Emphasis added.)

The respondents can prevail only if the Act is to be read as repealing by implication all existing statutes "which restrict public access to specific Government records." *Ibid.* The term "specific" as there used cannot be read as meaning that the exemption applies only to documents specified, *i. e.,* by naming them precisely or by describing the category in which they fall. To require this interpretation would be to ask of Congress a virtually impossible task. Such a construction would also imply that Congress had undertaken to reassess every delegation of authority to withhold information which it had made before the passage of this legislation—a task which the legislative history shows it clearly did not undertake.

Earlier this Term, MR. JUSTICE BRENNAN, speaking for the Court in the *Regional Rail Reorganization Act Cases, supra,* noted that "repeals by implication are disfavored,"

---

Committee on the Judiciary, 89th Cong., 1st Sess., 366 (1965). The statute's predecessor (49 U. S. C. § 674) also was specifically listed on an exhibit of "exempt statutes" submitted during the 1958 Hearing on S. 921 before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 85th Cong., 2d Sess., pt. 2, pp. 985–987, 997. Subsequent lists—specifically not claiming to be exhaustive—include similar statutes. See House-Committee on Government Operations, Federal Statutes on the Availability of Information, 86th Cong., 2d Sess., 213, 209 (Comm. Print Mar. 1960), listing 26 U. S. C. § 6104 (a) and 15 U. S. C. § 78x (b). See generally K. Davis, Administrative Law Treatise § 3A.18 (1970 Supp.).

419 U. S., at 133, and that, when courts are confronted with statutes " 'capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.' " *Id.,* at 133–134, quoting *Morton* v. *Mancari,* 417 U. S. 535, 551 (1974). As we have noted, here, as in the *Regional Rail Reorganization Act Cases, supra,* there is "clear evidence that Congress was aware of the necessity to deal expressly with inconsistent laws," 419 U. S., at 129. To spell out repeal by implication of a multitude of statutes enacted over a long period of time, each of which was separately weighed and considered by Congress to meet an identified need, would be a more unreasonable step by a court than to do so with respect to a single statute such as was involved in the *Regional Rail Reorganization Act Cases, supra.* Congress' response was to permit the numerous laws then extant allowing confidentiality to stand; it is not for us to override that legislative choice.

The discretion vested by Congress in the FAA, in both its nature and scope, is broad. There is not, however, any inevitable inconsistency between the general congressional intent to replace the broad standard of the former Administrative Procedure Act and its intent to preserve, for air transport regulation, a broad degree of discretion on what information is to be protected in the public interest in order to insure continuing access to the sources of sensitive information necessary to the regulation of air transport. Congress could not reasonably anticipate every situation in which the balance must tip in favor of nondisclosure as a means of insuring that the primary, or indeed sole, source of essential information would continue to volunteer information needed to develop and maintain safety standards. The public interest is served by assuring a free flow of relevant information to the regulatory

authorities from the airlines. Congress could appropriately conclude that the public interest was better served by guaranteeing confidentiality in order to secure the maximum amount of information relevant to safety. The wisdom of the balance struck by Congress is not open to judicial scrutiny.

It was inescapable that some regulatory authorities be vested with broad, flexible discretion, the exercise of which was made subject to continuing scrutiny by Congress. Following passage of the Act, "[g]eneral oversight into the administration of the Freedom of Information Act [was] exercised by the [House] Foreign Operations and Government Information Subcommittee and the Senate Subcommittee on Administrative Practice and Procedure." H. R. Rep. No. 92–1419, pp. 3–4 (1972). It is not insignificant that this overall scrutiny of the Act in 1972 brought no change in Exemption 3. Indeed, when Congress amended the Freedom of Information Act in 1974, it reaffirmed the continued vitality of this particular exemption, covering statutes vesting in the agencies wide authority. S. Conf. Rep. No. 93–1200, p. 12 (1974); H. R. Conf. Rep. No. 93–1380, p. 12 (1974).

Moreover, Congress amended the Act in 1974 to require that all agencies submit to each House, on an annual basis, "the number of determinations made by such agency not to comply with requests for records ... and the reasons for each such determination." 88 Stat. 1564, 5 U. S. C. § 552 (d)(1) (1970 ed., Supp. IV). In light of this continuing close scrutiny, we are bound to assume that Congress exercised an informed judgment as to the needs of the FAA and that it was persuaded as to the necessity, or at least of the practical compatibility, of both statutes.

*Reversed.*

MR. JUSTICE DOUGLAS and MR. JUSTICE BRENNAN dissent for the reasons given in Judge Fahy's opinion for the Court of Appeals, 162 U. S. App. D. C. 298, 498 F. 2d 1031 (1974).

MR. JUSTICE STEWART, with whom MR. JUSTICE MARSHALL joins, concurring in the judgment.

Exemption 3 of the Freedom of Information Act, 5 U. S. C. § 552 (b)(3), provides for nondisclosure of "matters that are . . . specifically exempted from disclosure by statute." Section 1104 of the Federal Aviation Act of 1958, 72 Stat. 797, 49 U. S. C. § 1504, specifically provides that when "[a]ny person" objects to the public disclosure of certain information, "the Board or Administrator shall order such information withheld from public disclosure when, in their judgment, a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public." The Court today rules that information may be withheld under § 1104 by reason of Exemption 3.

Legislation of unusually broad scope often reflects reconciliation of conflicting values and policies. On occasion, therefore, particular provisions of such legislation may seem at odds with its basic purpose. But when the statutory language is relatively clear and the legislative history casts no serious doubt, the only appropriate judicial course is to give effect to the evident legislative intent.

So it is here. The Freedom of Information Act was enacted in order to impose objective and easily applicable statutory disclosure standards in place of relatively amorphous standards such as the "public interest," behind which the most self-serving motives for nondisclosure of information could be concealed. *EPA* v. *Mink,* 410 U. S. 73, 79 (1973); and see, *e. g.,* S. Rep. No. 813,

89th Cong., 1st Sess., 3 (1965). But it seems equally clear that Congress intended to leave largely undisturbed existing statutes dealing with the disclosure of information by specific agencies. See, *e. g.,* H. R. Rep. No. 1497, 89th Cong., 2d Sess., 10 (1966).

Simply stated, the respondents' position is that to allow administrative discretion under a general "public interest" standard to determine whether information shall be disclosed to the public is inconsistent with the general thrust of the Freedom of Information Act. For this Court to accept that position, it must accept its inevitable corollary: that by enacting the Freedom of Information Act, Congress intended to repeal, by implication alone, those statutes that make disclosure a matter of agency discretion.[1] It simply is impossible fairly to discern any such intention on the part of Congress. There is no evidence of such an intention in either the statutory language or the legislative history, and there are strong intimations to the contrary. See *ante,* at 263–265.

Our role is to interpret statutory language, not to revise it. As matters now stand, when an agency asserts a right to withhold information based on a specific

---

[1] A substantial number of statutes leave disclosure of various documents to the discretion of an administrative officer. Examples are 52 Stat. 1398, as amended, 42 U. S. C. § 1306 (a), which prohibits disclosure of "any . . . report . . . obtained at any time by the Secretary of Health, Education, and Welfare . . . except as the Secretary . . . may by regulations prescribe"; 35 U. S. C. § 122, which provides that information in patent applications cannot be made public by the Patent Office "unless necessary to carry out the provisions of any Act of Congress or in such special circumstances as may be determined by the Commissioner"; and 38 U. S. C. § 3301, which states that all files, records, and other papers pertaining to any claim under any law administered by the Veterans' Administration are not to be disclosed, except that "[t]he Administrator may release information . . . when in his judgment such release would serve a useful purpose."

statute of the kind described in Exemption 3, the only question "to be determined in a district court's *de novo* inquiry is the factual existence of such a statute, regardless of how unwise, self-protective, or inadvertent the enactment might be." [2] *EPA* v. *Mink, supra,* at 95 n. (STEWART, J., concurring).

On this basis, I concur in the judgment of the Court.

---

[2] It should be noted, however, as the Solicitor General has pointed out, that under 49 U. S. C. § 1486, judicial review of an order of nondisclosure under 49 U. S. C. § 1104 is available in the courts of appeals.