**AVIATION CONSUMER ACTION PROJECT, Plaintiff,**

v.

**CIVIL AERONAUTICS BOARD, Defendant.**

**Civ. A. No. 413–73.**

United States District Court, District of Columbia.

Aug. 19, 1976.

---

Larry P. Ellsworth, Washington, D.C., for plaintiff.

Jeffrey Axelrad, Atty., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

WILLIAM B. JONES, Chief Judge.

On May 10, 1976, this Court entered a Memorandum and Order in this action rejecting defendant's arguments that its decisions made pursuant to 49 U.S.C. § 1461 were not subject to disclosure under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA), until their approval or disapproval by the President. Specifically, the Court enjoined defendant:

> from withholding from public inspection and copying all future decisions or portions of future decisions made by defendant pursuant to 49 U.S.C. § 1461, at any time immediately after those decisions are physically transmitted to the President, unless the withholding is validly premised on a statutory provision or Executive Order other than 49 U.S.C. § 1461(a).

Subsequent to the issuance of the Court's May 10, 1976 Memorandum and Order, two events have occurred which have given rise to cross-motions by the parties.

First, on June 10, 1976, the President issued Executive Order No. 11920, effective July 11, 1976, which set forth, *inter alia*, a procedure for temporary nondisclosure of section 1461 decisions "in order to allow for consideration of appropriate action under Executive Order No. 11652,[1] as amended." Exec. Order 11920, § 1(b). The Order directs the Board to withhold from public disclosure a section 1461 decision "for five days after submission to the President." *Id.* Within that five day period, the Order provides for a review of the section 1461 decision by the Secretary of State, the Secretary of Defense, and the Assistant to the President for National Security Affairs to determine whether any action under Executive Order No. 11652 should be taken, to complete such review within the five day period, and to inform the Board of any classification action to be taken before publication. On and after the sixth day after submission to the President, the Board is authorized to disclose the unclassified portions of the section 1461 decision. *id.*, § 1(d), (e).

The second event leading to the cross-motions was the promulgation by the defendant of regulations governing publication of section 1461 decisions subsequent to the five day procedure now required under Executive Order No. 11920. Essentially, the new regulation provides that each decision will be released to the public "as promptly as possible but no later than the tenth working day following submission of such decision to the President." 14 C.F.R. § 399.101, as amended July 9, 1976. The regulation specifically contemplates that the decision will not be released, in any form, until it has been "print[ed] and process[ed] for publication" on a mass distribution basis. *See id.*; Schultz Aff. (II), ¶ 6. Thus, if one person were to appear at the Board on the sixth day after submission of a section 1461 decision to the President to request a copy of the unclassified portions of that decision, he would be denied access to the decision until it were printed and processed for publication on a mass distribution basis.

Defendant initially moved the Court to vacate the May 10, 1976 Order on the ground that the controversy had become moot in light of the promulgation of Executive Order No. 11920. Plaintiff thereafter moved to compel compliance with the Court's Order, citing several instances where interested persons had been denied access to particular decisions for periods of time ranging from four to ten or more days. *See generally* Affs. to Pl's Motion to Compel Compliance. A hearing was held on the cross-motions on July 15, 1976, at which the Court orally denied defendant's motion,[2] and requested further briefing on the question of the validity of the newly promulgat-

---

1. Executive Order No. 11652 establishes a procedure for classification and dissemination of "information and material which, because it bears directly on the effectiveness of our national defense and the conduct of our foreign relations, must be subject to some constraints for the security of our Nation and the safety of our people and our allies." Exec. Order 11652.

2. A written order to the same effect was entered the same day.

ed Board regulation. Post-hearing memoranda have been submitted to the Court, and plaintiff's motion is now ripe for decision.

Plaintiff's motion raises two distinct issues. First, the Court must determine whether Executive Order No. 11920 violates the FOIA and the Court's Order by precluding public release of a section 1461 decision for five days after it has been submitted to the President. Second, the Court must determine whether the defendant's new regulation violates the FOIA and the Court's Order by precluding public release of a section 1461 decision to any person who requests access until it is printed and processed for publication on a mass distribution basis.

## EXECUTIVE ORDER NO. 11920

█ In rendering its May 10, 1976 decision, the Court specifically noted that a section 1461 decision might be withheld even after submission to the President if an order of nondisclosure is entered by the Board pursuant to 49 U.S.C. § 1504. Section 1504 provides for such an order upon written objection by "any person" if "disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public." At the July 15, 1976 hearing on the cross-motions, plaintiff's counsel agreed that the President comes within the class of "any person," but argued that neither the Board nor the President had invoked section 1504 as a basis for the Executive Order.[3]

█ In effect, the Executive Order acts as a "written objection" by the President to the disclosure of any information in any

section 1461 decision until the five day period for review has been undertaken. By issuance of its new regulation on July 9, 1976, the Board in effect accepted that such a delay in disclosure was necessary to enable the President to effect his constitutional duties, and that earlier disclosure is not required in the public interest. Although not expressly relying upon section 1504, it is clear that defendant would be authorized and within its discretion in doing so, and beyond that determination this Court is without authority to tread. *See Administrator, Federal Aviation Administration v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975). It would be purposeless to require both the President and the Board to re-promulgate for cosmetic purposes actions which clearly have a basis in law, and therefore the Court finds the Executive Order to be consonant with the FOIA and the Court's May 10, 1976 Order.

## THE NEW BOARD REGULATION

█ Defendant first asserts that the FOIA authorizes it to withhold section 1461 decisions for a period of ten working days, premising its contention on subsection (a)(6)(A) of the Act, which requires that an agency determine within ten days whether to publicly release requested documents. Simply put, this argument stands the FOIA on its head. Subsection (c) specifically states that nothing in section 552 "authorize[s] withholding of information or limit[s] the availability of records to the public, except as specifically stated in this section." Subsection (a)(6)(A) certainly does not "specifically state" that otherwise nonexempt records may be withheld for ten days. Indeed, subsection (a)(6)(C) states that once it

**3.** In plaintiff's post-hearing memorandum, it also asserts that it does not believe the Board "conscientiously can make such findings" requisite to issuance of an order of nondisclosure. Pl's Mem. at 7 n. 5. The Court is left unaware of the reasons for this conclusion, and is itself unaware of any reasons. If plaintiff means to argue that the findings can only be made with respect to an individual document rather than a category of documents, that argument is foreclosed by *Administrator, Federal Aviation Administration v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), which in-

volved a section 1504 nondisclosure order regarding a category of documents. If plaintiff means to argue that the historical dearth of classification decisions renders a section 1504 decision an abuse of the "broad discretion" invested by Congress in the Board under section 1504, *Robertson, supra* at 266, 95 S.Ct. 2140, its proof falls far short of the required showing, particularly in light of the weighty interests at stake and the ever-present possibility that national security information may in the future be found in a section 1461 decision.

is determined that the agency will comply with a request, "the records shall be made promptly available." And subsection (a)(3) requires that any records not otherwise exempt be made "promptly available to any person." It has been determined in this litigation that section 1461 decisions are not exempt from disclosure under the Act; there is no other determination to be made regarding disclosure, save under the procedures outlined in Executive Order No. 11920. The FOIA, therefore, mandates that the records be made "promptly available," following the five day review period contemplated by the Executive Order, and does not provide a statutory basis for withholding the decisions for an additional five working days.

There remains but one question: whether the new regulation provides for making records "promptly available to any person" as required by subsection (a)(3). Essentially, defendant argues that "promptly available" is satisfied by the short delay—estimated at between 24 hours and five working days—necessary to print and process the decision for publication on a mass distribution basis. If the Board is not permitted the time necessary to print sufficient copies of its decision so that it may be distributed simultaneously to all persons interested in the decision, defendant argues, those who become aware of the decision before others "through fortuity or sophistication" will be given unfair advantage over others in the stock or other financial markets. Schultz Aff. (II), ¶ 6. Defendant admits, however, both that "no method of distribution can result in all interested persons learning of an agency decision at the exact same time," and that its own distribution system provides those persons who are able to physically obtain a copy at the Board's offices with earlier access than those persons who must rely on the mails for distribution. *Id.*

▬ Whether the purpose for which the regulation has been instituted is wise

need not be decided, because there is simply no basis in the FOIA for its use as a basis for otherwise needless delay in making a decision available to the public. *See Merrill v. Federal Open Market Committee of the Federal Reserve System*, 413 F.Supp. 494, 506 (D.D.C.1976) (that prompt release of documents would be injurious to agency's functions, if documents are not within exemption, cannot support delay in release). The FOIA specifically states that a requested record not otherwise exempt shall be made promptly available "to any person"; it does not state that a requestor need wait until the agency determines that enough copies are available to satisfy all prospective requestors beside himself. Nor does it state that a record is not releasable until it has been printed and processed for publication on a mass distribution basis. Indeed, the FOIA apparently contemplates that only the release of subsection (a)(2) records may be delayed for publication purposes, and defendant has consistently argued that section 1461 decisions do not fall within subsection (a)(2). *See Merrill, supra* at 505. When "any person" requests access to a section 1461 decision, it must be made "promptly available" to him under subsection (a)(3), regardless of whether other persons have the same ability to gain access at substantially the same time.

Difficult questions arise, however, as to how quickly copies of a section 1461 decision must be made available. It is clear that, within the circumstances of this case "promptly" cannot always mean "immediately," a physical impossibility where many persons seek immediate access to one document.[4] Additionally, Congress has, as a rule, been more concerned with undue or inordinate delay than with delay attendant to normal reproduction process. *See* H.Rep. 93–876, 93d Cong. 2d Sess. 6 (1974) U.S. Code Cong. & Admin.News 1974, p. 6267; S.Rep. 93–954, 93d Cong. 2d Sess. 23–28 (1974). No reason (other than that rejected

---

4. Similarly, if directed to delete certain portions of a decision under Executive Order No. 11920, the Board, would not violate the "promptly available" requirement if it delays

public release of the decision for a period of time reasonably necessary to effectuate the deletions and prepare a releasable copy of the decision.

above) has been advanced to this Court, however, why defendant cannot provide one copy of its decision for public inspection and copying at a public place within a reasonable time necessary to prepare a releasable copy, refer requestors to that copy until the decision is printed and processed for publication on a mass distribution basis, and inform requestors that upon completion of that process an individual copy will either be mailed or made available to them. Defendant argues that this would result in inequity to those unable personally to appear at the Board office to review the one public copy. But the disparity in availability in the vast majority of instances, if defendant's representations are correct that most decisions are released within a 24-hour period on a mass distribution basis, would be no greater than that already experienced under the Board regulation, whereby persons restricted to reliance on the mail must await delivery for a period of one or more days. If a requestor appears at the office while another requestor is reviewing or copying the only available copy, simply informing him that such is the case and that he must await completion of the prior requestor's review, or alternatively await publication of the decision, would not violate the "promptly available" requirement.

## CONCLUSION

Defendant's motion to vacate the Court's order has already been denied; nothing has been brought to the attention of the Court to alter that decision; and therefore no further action will be taken. Plaintiff's motion is without merit insofar as it seeks invalidation of Executive Order No. 11920. With regard to the new regulation of the Board, however, insofar as the regulation permits withholding of a document beyond the time when it can be made "promptly available," as that term has been discussed in the foregoing memorandum, it is invalid. Plaintiff's motion to compel compliance will be granted to the extent contemplated by the foregoing memorandum.[5]

---

5. Even though defendant has filed a notice of appeal, this Court has jurisdiction to entertain and grant plaintiff's motion "to insure that a

In light of the foregoing, it is this 19th day of August, 1976,

ORDERED that plaintiff's motion to compel compliance with the Court's Order be and the same hereby is granted in part and denied in part; and it is further

ORDERED that defendant is enjoined from implementing 14 C.F.R. § 399.101, as amended July 9, 1976, insofar as it permits withholding of a document beyond the time when it can be made promptly available to a person requesting access to it.

judgment of a court is given full effect." *Lamb v. Carey*, 162 U.S.App.D.C. 247, 498 F.2d 792–93 (1974).