June 23, 1978

**78-35  MEMORANDUM OPINION FOR THE GENERAL
COUNSEL, CIVIL SERVICE COMMISSION**

**Veterans Preference Act (5 U.S.C. §§ 2108,
3309-3320)—Dependents—Preference—Foreign
Installations**

This responds to your predecessor's request for our opinion as to the legality
of certain Department of Defense (DOD) hiring practices in foreign-area
installations.

Our understanding of the relevant facts is as follows: In 1972, the Civil
Service Commission promulgated 5 CFR § 213.3106(b)(6). This excepted jobs
in DOD foreign-area installations from the competitive service when filled by
dependents of DOD personnel. It was issued under the Commission's general
authority to except positions from the competitive service "when it determines
that appointments thereto through competitive examinations are not practica-
ble." 5 CFR § 6.1.

In these foreign-area installations DOD extends a preference in hiring to
dependents of DOD personnel over other applicants. Some are hired in regular
DOD civilian positions. Others, however, are hired pursuant to an arrangement
between the Federal Republic of Germany and the United States. This
arrangement is based upon a North Atlantic Treaty Organization Status of
Forces Agreement (NATO SOFA—4 UST 1792, Art. IX, Par. 4), which
provides that U.S. forces operating in other NATO countries may hire from the
local civilian population in accordance with the laws of the receiving country,
*i.e.*, the country in which the U.S. forces are present. Persons so hired are
called "local nationals." Germany claims that certain treaty agreements entitle
German local nationals to fill a specified number of these positions. However,
all of these positions designated for local nationals are not so filled. Germany
has permitted some local national positions to be filled by dependents in
deference to the needs of DOD personnel and their families. Unless dependents
(primarily wives of DOD personnel) are provided jobs to supplement the
earnings of the family unit, DOD personnel could in many cases not afford to
have their families accompany them abroad. In this regard, the State Depart-
ment states "that as a matter of practice and not of written agreement the

Federal Republic of Germany willingly acquiesces in the United States forces in Germany employing its dependents for jobs designated, under NATO SOFA, for foreign national occupancy.'' DOD contends that attempts to fill these local national positions with persons other than dependents may result in the withdrawal of these positions from U.S. control.

Furthermore, we have been advised that the number of local national positions filled by dependents is approximately 5,659. Of these, about 5,449 are in Germany. As for dependents in regular DOD positions, they number approximately 5,680. Of these, about 4,051 are in Germany. The regular DOD positions can be filled with persons other than dependents with no danger of reversion to local nationals because these positions are not subject to foreign control.

As we understand it, a number of U.S. veterans residing in these foreign areas, particularly Germany, have complained that the dependent-preference hiring arrangement fails to take the Veterans Preference Act, 5 U.S.C. §§ 2108, 3309−3320, into account. Under that Act "preference eligibles"[1] are entitled to have 5 or 10 points[2] added to their employment-evaluation rating.

In this factual setting, the basic inquiry is whether DOD's practice of hiring dependents in foreign-area installations violates the Veterans Preference Act.[3] Specifically, three questions are presented. The principal question is whether, in light of 5 U.S.C. § 3320, the Civil Service Commission had authority to promulgate 5 CFR § 213.3106(b)(6). Secondly, what effect, if any, does § 106 of Public Law 92-129, 85 Stat. 355, have on the Veterans Preference Act? Finally, do NATO SOFA and working arrangements under that agreement supersede the Veterans Preference Act? For the reasons that follow, we conclude that the Veterans Preference Act is applicable to these positions; we are of the opinion, however, that the Commission may properly excuse application of that Act to the local national positions filled by dependents should it find that such application would not benefit preference eligibles.

We now turn to the question whether § 106 of Public Law 92-129 supports the extension of an employment preference to dependents in our overseas installations. As stated above, in 1972 the Commission excepted positions in foreign area installations from the competitive service so long as they were

---

[1] The term "preference eligible," as defined in 5 U.S.C. § 2108(3), includes veterans who have served on active duty in the Armed Forces under certain conditions that need not be listed here. And in some cases the spouses and mothers of these veterans are also preference eligibles.

[2] While most preference eligibles are entitled to a 5-point preference, others receive a 10-point preference. This latter group consists primarily of veterans with service-connected disabilities, and in some cases their spouses and mothers. Also, certain surviving spouses and mothers of individuals who lost their lives in military service to this country qualify for the 10-point preference. *See* 5 U.S.C. §§ 2108(3)(c)-(g), 3309.

[3] Although DOD admits that dependents are given preference over nondependents, it states that within the framework of its dependent hiring policy, dependents who are also veterans are given preference as against veterans who are not dependents. But DOD does not, and indeed could not, reasonably, contend that this procedure comports with the requirements of the Veterans Preference Act. Rather, it contends that § 106 of Public Law 92-129, discussed *infra*, renders the Veterans Preference Act inoperative in these overseas appointments that involve dependents.

filled by dependents of DOD personnel stationed in the area. This exception was granted, in large part, on the assumption that § 106 of Public Law 92-129 was intended to create a dependent's preference in foreign countries. We do not believe that Congress intended such a preference. That section reads, in pertinent part, as follows:

> Unless prohibited by treaty no person shall be discriminated against by the Department of Defense . . . in the employment of civilian personnel at any facility or installation operated by the Department of Defense in any foreign country because such person is a citizen of the United States or is a dependent of a member of the Armed Forces of the United States . . . .

The purpose of § 106 is explained in its legislative history. The conference report states:

> The Senate version contained a provision prohibiting job discrimination against American citizens and their dependents in hiring on United States military bases in any foreign country.
>
> The House bill contained no such provision. The purpose of the Senate provision is to correct a situation which exists at some foreign bases, primarily in Europe, where discrimination in favor of local nationals and against American dependents in employment has contributed to conditions of hardships for families of American enlisted men whose dependents are effectively prevented from obtaining employment. [H. Rept. No. 92-433, 92d Cong., 1st sess. 31 (1971)]

The Senate report states:

> The purpose of this amendment is to correct a situation which exists primarily on some American bases in Europe. In some cases, discrimination in favor of local nationals and against American dependents in employment has helped create conditions of poverty for families of American enlisted men. [S. Rept. No. 92-93, 92d Cong., 1st sess. 23 (1971)]

Finally, the Senate hearing with respect to § 106 also addresses the problem. Senator Schweiker commented on some problems facing U.S. military personnel stationed in Germany who have financial difficulty in bringing their wives to live with them. In a colloquy with then-Secretary of Defense Laird, Senator Schweiker stated:

> One other inequity . . . is that the wife who does get over there mainly on a loan that the GI floats, and then rents whatever quarters is available, which isn't very much for that money, is then in a position where she can't take a job because under the Status of Forces Treaty obligations we are not permitted to let our nationals work at certain kinds of positions . . . . [W]e have our GI with a wife that he is trying to support on a poverty level, and we don't even let her work under the Status of Forces Agreement . . . . [I]t makes my blood boil a little bit when I see the way we are being treated by some of our allies over

there when they deny employment to the wives of GIs who just want the right to be with their husbands, something that every other citizen in Europe has at that time. I would appreciate if you would consider looking into amending that Status of Forces Agreement so that our GIs' wives are not discriminated against.[4] [Selective Service and Military Compensation: Hearings on S. 392, S. 427, S. 483, S.J. Res. 20, S. 494, S. 495, and S. 496 before the Senate Committee on Armed Services, 92d Cong., 1st sess. 46-47 (1971)]

We are of the opinion that § 106 was not intended to create a preference for dependents over other American citizens in DOD foreign-area ·installation hiring. Its plain language prohibits discrimination against U.S. citizens and Armed Forces dependents. It, thus, evinces an intent to extend protection against discrimination to all U.S. citizens and Armed Forces dependents. The language permits no reasonable inference that any subgroup of the protected class was to enjoy benefits over any other subgroup. And the above quoted excerpts from § 106's legislative history clearly show that the statute was designed to protect U.S. citizens and dependents against discrimination in favor of local nationals. Thus, neither the language nor the legislative history of the section reveals a congressional intent to establish hiring preferences among U.S. citizens.

Neither the section nor its legislative history mentions the Veterans Preference Act. Accordingly, any contention that § 106 partially repealed that Act must rest on the argument that it was repealed by implication. It is a familiar principle of statutory construction that repeals by implication are disfavored. When two statutes are capable of coexistence, each must be regarded as effective absent a clearly expressed congressional intention to the contrary. *Administrator, FAA* v. *Robertson*, 422 U.S. 255 (1975); *Morton* v. *Mancari*, 417 U.S. 535 (1974). Any repeal intention must be clear and manifest. *Morton* v. *Mancari*, 417 U.S. at 551. There is no expression of congressional intention that the Veterans Preference Act was to be affected in any way and it is reasonably possible to read the two statutes compatibly. For these reasons we believe that § 106 was not designed to alter the application of the Veterans Preference Act.

## II.

Another question asked is whether the Commission was authorized to promulgate 5 CFR § 213.3106(b)(6) in the face of 5 U.S.C. § 3320. That statute reads as follows:

The nominating or appointing authority shall select for appointment to each vacancy in the excepted service in the executive branch

---

[4]We note that Senator Schweiker's comments did not reflect an intent that the legislation under consideration in the hearings would have any effect on NATO SOFA. He merely requested Secretary Laird to look into the problem of NATO SOFA's impact on employment opportunities for wives of Armed Forces personnel. Moreover, § 106 expressly disclaims any intent to alter any treaty obligation.

and in the government of the District of Columbia from the qualified applicants in the same manner and under the same conditions required for the competitive service by sections 3308-3318 of this title. This section does not apply to an appointment required by Congress to be confirmed by, or made with the advice and consent of, the Senate.

We note preliminarily that all 5 CFR § 213.3106(b)(6) purports to do is place the dependent positions in Schedule A of the excepted service. In our opinion, 5 U.S.C. § 3320 makes it clear that the Veterans Preference Act applies to the excepted service as well as the competitive service. Therefore, merely placing positions in the excepted service does not remove them from coverage of the Act. And as we have discussed above, there is no statutory authority in this case for a Veterans Preference Act exemption.[5]

For these reasons we are of the opinion that the Veterans Preference Act applies to those dependent positions filled under routine DOD appointing authority. Thus, the approximately 5,680 positions in this category must be filled in accordance with that Act, and any preference eligible applying for such a position must be accorded the benefit of that Act.

### III.

Finally, we turn to the question whether the Veterans Preference Act must be applied to those local national positions filled by dependents pursuant to an informal agreement between the United States and the Federal Republic of Germany. The specific issue presented is whether an international agreement ratified by the Senate, in this instance, the NATO SOFA, and working arrangements under that agreement, take precedence over the Veterans Preference Act? We have, however, been informed by representatives of the General Counsel at both the Defense and State Departments that NATO SOFA's exemption from U.S. employment laws[6] applies only to foreign local nationals. Thus, they implicitly concede that there is no conflict between NATO SOFA and the Veterans Preference Act.

This, however, does not dispose of the question of whether the Commission must enforce that Act where dependents conditionally occupy local national positions. The facts presented indicate that any attempt to fill these positions with persons other than dependents of U.S. forces personnel will result in Germany's insistence that the positions revert to German local nationals. Hence, such a result would make application of the Veterans Preference Act a

---

[5]The Commission has indicated that it intends to terminate the exception of § 213.3106(b)(6). While we do not believe this exception serves to excuse the requirements of the Veterans Preference Act, we note that "[t]he Commission may remove any position from or may revoke in whole or in part any provision of Schedule A, B, or C." Commission Rule VI, 5 CFR § 6.6.

[6]NATO SOFA (4 UST 1792, 1810) provides that the laws of the receiving State shall be followed when U.S. forces or civilian components hire "local civilian labour." Neither the State Department nor DOD contends that these laws apply when U.S. citizens are placed in positions designated for local national occupancy.

hollow victory for veterans since they would not be allowed to occupy these positions.

The Veterans Preference Act is not indifferent to circumstances that might warrant selection of persons other than preference eligibles, even where the preference eligible has the highest rating of all job applicants. An appointing officer may pass over a preference eligible and select a nonpreference eligible if the reasons for so doing are stated in writing, and if the Commission finds such reasons to be sufficient. 5 U.S.C. § 3318(b). That section makes it plain that the Commission is the ultimate authority on the decision whether the reasons for passing over a preference eligible are sufficient.[7] Your predecessor stated that the Commission tentatively concluded that the Veterans Preference Act should not apply to the local national positions.

If the Commission decides that application of the Veterans Preference Act would not result in jobs in local national positions for veterans, and that this constitutes a sufficient reason to pass over preference eligibles, we believe that decision would be within the scope of the Commission's authority.[8]

In sum, we believe that the Veterans Preference Act applies to overseas positions, and that there is no legal justification for excusing its application to regular DOD appointments. However, we think that the Commission is empowered to excuse its application to U.S. citizens filling the local national positions for the reasons stated herein.

We trust that this fully responds to your questions.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[7]*See also* S. Rept. No. 679, 83d Cong., 1st sess. 2 (1953), which makes it clear that the Commission has final authority in these decisions.

[8]Although § 3318(b) speaks in terms of passing over preference eligibles in individual appointments, we see no reason why the Commission may not grant a blanket pass over to cover a class of appointments involving similar situations, and having a common sufficient reason.

Further authority for such an exemption may be found in 5 CFR § 302.101(c), which provides in pertinent part:

. . . each agency shall follow the principles of veteran preference as far as administratively feasible. . . .

However, in the case of the local national positions it is arguable that it would not be "administratively feasible" to apply the Veterans Preference Act since such application would not result in jobs for veterans.