Casper Carroll GIBSON, Plaintiff-Appel-
lant-Cross Appellee,

v.

Rex DAVIS, Director, Bureau of Alcohol,
Tobacco and Firearms et al., Defend-
ant-Appellees-Cross Appellants.

Nos. 77–3067, 77–3068 and 77–3184.

United States Court of Appeals,
Sixth Circuit.

Argued June 21, 1978.

Decided and Filed Nov. 17, 1978.

Armistead W. Gilliam, Jr., Charles J. Fa-
ruki, Smith & Schnacke, Dayton, Ohio, for
plaintiff-appellant-cross appellee in all
cases.

James C. Cissell, U. S. Atty., Dayton,
Ohio, Leonard Schaitman, Frank Rosenfeld,
Dept. of Justice, Civil Division, App. Sec-
tion, Washington, D.C., for defendants-ap-
pellees-cross appellants in all cases.

Before PHILLIPS, Chief Judge, and CE-
CIL and PECK, Senior Circuit Judges.

CECIL, Senior Circuit Judge.

These appeals are from orders of the
United States District Court for the South-
ern District of Ohio, Western Division, by
the appellant, Casper Carroll Gibson and
the appellees, Rex Davis, Director, Bureau
of Alcohol, Tobacco and Firearms and oth-
ers.

Briefly, the facts giving rise to the litiga-
tion in the District Court are: On Septem-
ber 24, 1974, and prior thereto, the appel-
lant and one Jerry D. Johnston were agents
of the Bureau of Alcohol, Tobacco and Fire-
arms and stationed at Dayton. On this
date the two agents got into an argument
and, without trying to detail the progress of
it, Johnston discharged his gun and injured

the appellant. The appellant then shot Johnston and mortally wounded him. A federal grand jury investigated the incident but declined to return an indictment against the appellant.

As a result of this shooting incident, the sequence of events as affecting the appellant are as follows: On April 8, 1975, the appellant was first removed from his duties because of the killing of Johnston and the adverse publicity to the Bureau. On July 31, 1975, the Civil Service Commission found the removal fatally defective as lacking in specificity. The ATF was ordered to restore the appellant to his former position, grade and salary, retroactive to the date of his removal. The ATF, however, advised that the appellant would be removed from active duty upon return to his position. Under such circumstances the appellant chose to accept reinstatement but in the status of being on leave without pay.

On October 24, 1975, the appellant was again removed from his position in the ATF for the same reasons given in the first removal, in addition to the reason that appellant allegedly exhibited a lack of good judgment in continuing a hostile confrontation. On February 2, 1976, the Civil Service Commission again ordered that the appellant be restored to his former position, grade and salary. The ATF was given thirty (30) days to comply with the Commission's order, but did not restore appellant to active duty until March 8, 1976.

During the pendency of the Civil Service proceedings relative to appellant's second removal, the appellant herein filed his action on December 15, 1975, in the district court. In his complaint he sought reinstatement to active duty, full allowance of back pay, an order to the United States Postal Service enjoining it from withholding documents requested by the appellant under the Freedom of Information Act and an allowance of attorney's fees.

The district judge granted reinstatement to active duty with full back pay, denied that the appellant was entitled to any more documents under the Freedom of Information Act and allowed attorney's fees in the amount of $5,000.

The questions on the appeals challenge whether full back compensation has been paid, whether it was proper to allow attorney's fees to the appellant and whether the court erred in denying the appellant's request for documents under the Freedom of Information Act.

The appellant denies the government's claim that full back compensation has been paid. We have insufficient evidence in the record before us from which we can determine the amount of back pay due to the appellant to compensate him for all periods of time during which he was deprived of active duty status. We therefore remand the case to the district court to conduct a hearing and determine the amount of back pay due the appellant.

■ With reference to attorney's fees, the trial judge said:

"The Court notes with concern ATF's recalcitrant conduct in this matter and defiance of orderly administrative procedures. Such conduct by an enforcement agency of the United States has implications far beyond the limits of this case. It may well be that it has reached the level of bad faith and vexaciousness (sic) justifying an award of attorney fees to the plaintiff. See *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *U. S. v. Ford Motor Co.*, 522 F.2d 962, 967 (6th Cir. 1975); *Smoot v. Fox*, 353 F.2d 830, 832 (6th Cir. 1965). Accordingly, defendant is hereby ordered to show cause why reasonable attorney fees should not be awarded the plaintiff in this matter."

Subsequently, the court ordered the appellees to pay attorney's fees in the amount of $5,000. We conclude that in the absence of statutory authority attorney fees are not allowed against the government even though bad faith may have been involved.

We reverse.

Section 2412, Title 28, U.S.C. provides in part as follows:

"Except as otherwise specifically provided by statute, a judgment for costs, as

enumerated in section 1920 of this title *but not including the fees and expenses of attorneys* may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action." (Emphasis supplied)

 This statute then precludes the award of attorney's fees to a prevailing party in an action against the United States or any agency or official thereof, even though the prevailing party may recover his costs as provided in Section 1920, Title 28 U.S.C. Accordingly, attorney's fees may not be awarded to a prevailing party in such litigation even as costs since, as stated by this court,

" * * * it seems basic that if a party is immune from an award of attorneys' fees as such, that immunity is not altered by taxing the fees as part of the costs. If the award is void on one form, it is void in the other." *Jordon v. Gilligan*, 500 F.2d 701, 705 (6th Cir. 1974); *cert. den.* 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975).

 Appellant argues, however, that an exception to the statutory language should be made in this case in view of the district court's finding of vexatious, bad faith conduct on the part of defendants. It is true that federal courts, in the exercise of their equitable powers, may award attorney's fees when the interests of justice so require. *Hall v. Cole*, 412 U.S. 1, 4, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). More recently, the Supreme Court in *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, at 258–259, 95 S.Ct. 1612, at 1622, 44 L.Ed.2d 141[1] (1975), noted that attorney's fees may be awarded by a federal court where "the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"

As stated by the court in *Rhode Island Com. on Energy v. General Services*, 561 F.2d 397, at 405 (1st Cir. 1977),

"* * * the (Supreme) Court there was discussing, (*Alyeska Pipeline Co. v. Wilderness Society*) in the context of an award of attorney's fees against a private party, the 'bad faith' exception to the 'American rule' that attorney's fees are not to be awarded to a prevailing party. The Court nowhere suggested that § 2412's prohibition of attorney's fees contained, by implication, a bad faith exception. Later in its opinion, the Court rejected the suggestion that a 'private attorney general' exception existed to § 2412, which 'on its face, and in light of its legislative history, generally bars such awards, which, if allowable at all, must be expressly provided for by statute . . . .'"

 Appellant has not referred this court to any such authorizing statute nor has this court discovered any in its own research, which expressly provides for the award of attorney's fees in litigation such as is now before the court. As stated by the court in *Rhode Island Com. on Energy, supra*, at 405,

"By its literal terms, § 2412 admits of no judicially fashioned 'bad faith' exception. Only exceptions 'specifically provided by statute' will subject the United States or its agencies to liability for attorney's fees."

Section 2412, being a limited waiver of sovereign immunity, its

"limitations and conditions * * * must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

We conclude that the district court erred in allowing attorney's fees against the United States.

One of the claims of the appellant is that the district court erred in not enjoining the Postal Service from withholding documents requested by him under the Freedom of Information Act.

1. P. 269, n. 44, 95 S.Ct. at 1627, "Although an award against the United States is foreclosed by 28 U.S.C. Section 2412 in the absence of other statutory authorization, * * *"

In *Hawkes v. Internal Revenue Service*, 467 F.2d 787, at 791 (6th Cir. 1972), the Court quoted Chief Judge Bazelon of the United States Court of Appeals for the District of Columbia as stating the purpose of the Act as follows:

"The legislative history establishes that the primary purpose of the Freedom of Information Act was to increase the citizen's access to government records."

We examine the record of this case then, having in mind this legislative purpose.

With respect to appellant's request for documents of the United States Postal Service pursuant to the Freedom of Information Act, Title 5 U.S.C. § 552, the district judge ruled that the documents, unedited copies of which the court did not examine *in camera* were exempt from disclosure. The documents had been gathered by the Postal Service in connection with an investigation into a mail fraud scheme in which appellant alleged in his complaint other agents of the Bureau of Alcohol, Tobacco and Firearms had participated. Appellant alleged that although he expressed his belief that the scheme was unlawful to his superior at the Bureau, the Bureau took no action. Instead, according to appellant, the Bureau's concern about the complicity of some of its staff in the scheme becoming public knowledge was an "underlying reason" for the Bureau's dismissal of appellant. Hence, in addition to seeking reinstatement and backpay in this action, appellant also requested disclosure, pursuant to the Freedom of Information Act, Title 5 U.S.C. § 552 of "copies of all documents, including statement and interview notes and memoranda, in connection with (the United States Postal Service) investigation into this chain letter scheme in violation of the mail fraud statute."

The district judge reasoned that the documents were exempt from disclosure pursuant to Title 5 U.S.C. § 552(b)(3) and Title 39 U.S.C. § 410(c)(6). Title 5 U.S.C. § 552(b)(3) provides that disclosure of documents is not required if such documents are

" * * * specifically exempted from disclosure by statute (other than section 552(b) of this title) provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;"

The district judge reasoned further that the documents requested by appellant were specifically exempted from disclosure by Title 39 U.S.C. § 410(c)(6), which provides that the United States Postal Service's disclosure is not required of

" * * * investigatory files, whether or not considered closed, compiled for law enforcement purposes except to the extent available by law to a party other than the Postal Service."

The district judge said,

"The unqualified exemption of investigatory materials under 39 U.S.C. § 410(c)(6) is comparable to the exemption set forth in 5 U.S.C. § 552(b)(7) before it was narrowed by amendment in 1974. (Public L. 93–502, enacted November 21, 1974) Had Congress meant to narrow 39 U.S.C. § 410(c)(6) as well, it would have done so."

In support of his statutory interpretations, the district judge cited *Administrator, FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1972). While *Robertson* does reflect an expansive judicial interpretation of the phrase "specifically exempted from disclosure by statute" contained in Title 5 U.S.C. § 552(b)(3), that statute was subsequently amended by Pub.L. 94–409, enacted *September 13, 1976,* to set forth the conditions (A) and (B) which a statute must meet in order to be held to be one specifically exempting disclosure within the meaning of Title 5 U.S.C. § 552(b)(3). Although now in effect, the statute did not become effective until 180 days after its enactment and was, therefore, not in effect on *November 5, 1976* when the order now before this court was entered.

Yet, legislative history of the amendment makes it clear that Congress intended the amendment of § 552(b)(3)

" * * * to *overrule* the decision of the Supreme Court in *Administrator, FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1972).

* * * * * *

"Believing that the decision misconceives the intent of exemption (3), the committee recommends that the exemption be amended to exempt only material required to be withheld from the public by any statute *establishing particular criteria or referring to particular types of information.*" H.R.Rep. No. 94–880, 94th Cong. 2d Sess. (1976), reprinted in 3 U.S. Code Cong. and Admin.News 2183, at 2205. (Emphasis supplied)

In addition, in the discussion of the amendment in the final Conference Report, it is stated,

"The conferees intend this language to overrule the decision of the Supreme Court in *Administrator, FAA v. Robertson* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975) * * *" H.R.Rep. No. 94–1441, 94th Cong. 2d Sess. (1976), reprinted in 3 U.S.Code Cong. and Admin.News 2244, at 2260.

It is clear then, as stated by the court in *Phillippi v. Central Intelligence Agency*, 178 U.S.App.D.C. 243, at 245–246, n. 4, 546 F.2d 1009, at 1011–1012, fn. 4 (1976),

"This latest amendment (to Section 552(b)(3)) shows plainly that Congress is determined that the exemptions to the FOIA should be interpreted narrowly."

The district judge's reliance upon *Robertson* in this case makes it apparent that the court decided appellant's claim on the basis of Title 5 U.S.C. § 552(b)(3) as in effect at the time of the court's order. In view of authority cited herein, however, establishing the intent of Congress to overrule *Robertson* through amending that statute in a manner now in effect, remand of this action to the district court is necessary for that court to determine whether 39 U.S.C. § 410(c)(6) qualifies as an exempting statute within Title 5 U.S.C. § 552(b)(3), as amended.