The NATIONAL ASSOCIATION OF
MIRROR MANUFACTURERS,
Plaintiff,

v.

UNITED STATES, Defendant,

Glaverbel, S.A., Defendant-Intervenor.

Court No. 87–04–00592.

United States Court of
International Trade.

Sept. 15, 1987.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart and James R. Cannon, Jr., Washington, D.C., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Dept. of Justice, Jeanne E. Davidson; Paul C. Aiken, Office of the Deputy Chief Counsel for Intern. Trade, Dept. of Commerce, Washington, D.C., for defendant.

Ulmer, Berne, Laronge, Glickman & Curtis, Morton L. Stone and Ronald H. Isroff, Cleveland, Ohio, for defendant-intervenor.

DiCARLO, Judge:

The National Association of Mirror Manufacturers, plaintiff, and the United States, defendant, each move to strike the second and third sentences of paragraph 12 and the third request for relief contained in the answer of defendant-intervenor Glaverbel, S.A. Plaintiff and defendant argue that these portions of defendant-intervenor's answer amount to an untimely cross-claim over which this Court does not have jurisdiction.

Since the claim raised by defendant-intervenor in its answer does not comport with the time limitations imposed by section 516A(a) of the Tariff Act of 1930 (Act), as amended, 19 U.S.C. § 1516a(a) (Supp. III 1985), the Court finds it does not have jurisdiction to consider such claim. The Court grants the motions to strike.

The United States Department of Commerce, International Trade Administration (Commerce) published in the *Federal Register* on March 12, 1987 an amended final affirmative determination that unfinished mirrors from Belgium were being sold in the United States at less than fair value. *See Amendment to Final Determination of Sales at Less Than Fair Value; Mirrors in Stock Sheet and Lehr End Sizes From Belgium,* 52 Fed.Reg. 7634 (March 12, 1987). On March 19, 1987, the United States International Trade Commission (Commission) published its determination that the mirror industry in the United States is not materially injured or threatened with material injury, and the establishment of an industry in the United States is not materially retarded, by reason of imports of certain unfinished mirrors from Belgium. *See Certain Unfinished Mirrors from Belgium,* 52 Fed.Reg. 8656 (March 19, 1987).

Defendant-intervenor did not challenge either of these determinations, but moved on June 2, 1987 to intervene as a matter of right in the timely action brought by plaintiff as an interested domestic party chal-

lenging both determinations. In an answer filed simultaneously with the motion to intervene, defendant-intervenor claims: "[T]he low dumping margin of 0.97% arrived at by the ITA [Commerce] in its final determination is *de minimis* under law and under the facts and circumstances of this case. Therefore, the ITA should have arrived at a final negative determination of dumping with respect to unfinished mirrors produced by Defendant-Intervenor Glaverbel and exported to the United States." Defendant-intervenor's answer, page 4, paragraph 12.

Plaintiff and defendant argue that this claim made by defendant-intervenor in its answer disputes rather than supports the legal and factual basis of Commerce's final determination and therefore a motion to strike should be granted because the claim is beyond the statutory time limits for bringing such an action provided in section 516A(a) of the Act, as amended, 19 U.S.C. § 1516a(a).

According to defendant-intervenor, it would be a waste of time and resources for a foreign interested party to appeal an unfavorable, affirmative Commerce determination after a favorable, negative Commission determination, quoting from *Bethlehem Steel Corp. v. United States*, 742 F.2d 1405, 1410 (Fed.Cir.1984):

"After the notice's issuance, there still remained one last requirement before a countervailing duty order could issue—the ITC's final injury determination. If the ITC had found no injury, the investigation would have been terminated, and no countervailing duty order would have been promulgated. The decision below requires, however, an interested domestic party to appeal from the ITA determination even though shortly thereafter the whole question of duty assessment could become moot because the ITC found no domestic injury whatever. It is highly unlikely that Congress would call for such a potentially useless appeal."

In *Bethlehem Steel*, the court found that the contested portion of an affirmative determination was not itself a negative determination that should be appealed 30 days

after issuance pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i) & B(ii) (1982) (amended Supp. III 1985), but rather was a negative aspect of an affirmative determination timely challenged 30 days after issuance of the countervailing duty order pursuant to 19 U.S.C. § 1516a(a)(2)(A)(ii) & B(i) (1982) (amended Supp. III 1985). Although the *Bethlehem Steel* Court confronted the question of what type of action was brought, the court accepted that the action however characterized must be brought within the jurisdictional time limits prescribed by Congress.

Upon consideration of the present motions, the Court finds that the claim raised by defendant-intervenor in its answer is a challenge to Commerce's final affirmative determination. The defendant-intervenor is asserting that Commerce should have made a negative determination by finding the 0.97% dumping margin *de minimis*. Congress provided that a challenge to an affirmative determination of Commerce followed by a negative Commission determination must be brought 30 days after notice of the Commission's final negative determination in the *Federal Register* pursuant to 19 U.S.C. § 1516a(a)(3) (Supp. III 1985). *See* 28 U.S.C. § 2636(c) (Supp. III 1985).

Although defendant-intervenor's position that it is wasteful of time and resources for it to challenge an affirmative Commerce determination followed by a negative Commission determination may have some merit, there are cases in which it was beneficial to the foreign interested party to contest an affirmative Commerce determination despite a negative Commission determination. *See Canadian Meat Council v. United States*, 10 C.I.T. ——, 644 F.Supp. 1125 (1986); *Internor Trade, Inc. v. United States*, 10 C.I.T. ——, 651 F.Supp. 1456 (1986).

In evaluating the motions to strike, the Court must adhere to the strict standards which govern its jurisdiction. As stated by our appellate court in *Georgetown Steel Corp. v. United States*, 801 F.2d 1308, 1312 (Fed.Cir.1986):

Since section 1516a(a)(2)(A) [a jurisdictional provision like 19 U.S.C. § 1516a(a)(3)] specifies the terms and conditions upon which the United States has waived its sovereign immunity in consenting to be sued in the Court of International Trade, those limitations must be strictly observed and are not subject to implied exceptions.... If a litigant fails to comply with the terms upon which the United States has consented to be sued, the court has no "jurisdiction to entertain the suit." [Citations omitted].

The defendant-intervenor here makes a claim that challenges Commerce's affirmative determination through an answer filed almost two months beyond the end of the 30 day statutory deadline for challenging an affirmative Commerce determination following a negative Commission determination provided by 19 U.S.C. § 1516a(a)(3). It has been held consistently that a court lacks jurisdiction over a challenge to a Commerce determination brought by an intervenor which does not comport with the time limitations imposed by 19 U.S.C. § 1516a(a). *Nakajima All Co. v. United States,* 2 C.I.T. 170 (1981) [Available on WESTLAW, DCT database]; *Fuji Electric Co. v. United States,* 7 CIT 247, 595 F.Supp. 1152, *appeal dismissed,* No. 84–1639 (1984); *East Chilliwack Fruit Growers Co-operative v. United States,* 11 C.I.T. ——, 655 F.Supp. 499, 504–505 (1987); *Washington Red Raspberry Comm'n v. United States,* 11 C.I.T. ——, 657 F.Supp. 537, 545–546 (1987). The Court holds that it lacks jurisdiction over the claim raised by defendant-intervenor through an answer filed after the statutory time limit of 19 U.S.C. § 1516a(a)(3).

Defendant-intervenor attempts to distinguish the cases cited above by arguing that these cases deal with cross-claims which would have unduly enlarged the pleadings and thereby prejudiced the parties involved. In this action, defendant-intervenor contends, the claim it makes would not unduly enlarge the pleadings since the determination by Commerce is already placed in issue by plaintiff's complaint.

The Court is not persuaded that in the cases cited the decision to exclude the claim raised by the intervenor was based on a finding that such claim would unduly enlarge the pleadings. Even if the Court were so persuaded, the defendant-intervenor would not benefit since the Court finds the claim raised by defendant-intervenor in this action would unduly enlarge the pleadings.

The Court does not find any reference to the *de minimis* issue in either plaintiff's complaint or defendent's answer. The purpose of the challenge to Commerce's determination is to increase the dumping margin, not to reverse Commerce's affirmative determination.

As the court in *Fuji Electric* concluded, the intervenor must take the action "as it has been framed by the parties therein." 7 CIT at 249, 595 F.Supp. at 1154. Here defendant-intervenor in an answer filed after the jurisdictional time limits of 19 U.S.C. § 1516a(a)(3) attempts to inject a claim subject to such jurisdictional provision which the Court finds beyond the scope of the pleadings of the other parties. The Court holds that it does not have jurisdiction to consider this claim. The Court grants the motions to strike the second and third sentences of paragraph 12 and the third request for relief contained in defendant-intervenor's answer.

So ordered.