William A. STRETCH and Douglas A. Campbell

v.

Caspar W. WEINBERGER, Secretary, U. S. Department of Health, Education and Welfare, Appellant.

No. 73–1547.

United States Court of Appeals, Third Circuit.

Argued Oct. 30, 1973.

Decided March 5, 1974.

Herbert J. Stern, U.S. Atty., Newark, N. J., Harlington Wood, Jr., Asst. Atty. Gen., Walter H. Fleischer, Michael Kimmel, Dept. of Justice, Washington, D. C., for appellant.

Charles Lee Harp, Jr., Archer, Greiner & Read, Camden, N. J., for appellees.

## OPINION OF THE COURT

Before HASTIE, ALDISERT and WEIS, Circuit Judges.

HASTIE, Circuit Judge.

In the order from which this appeal has been taken, the district court required the Secretary of Health, Education and Welfare to make public disclosure of New Jersey extended care facility survey reports compiled before January 31, 1973.[1] These are reports

---

1. The Complaint sought reports compiled both before and after January 31, 1973. The Secretary supplied reports compiled after that date, pursuant to the Social Security Act Amendments of 1972, §§ 249C, 299D, 86 Stat. 1329, 1428, 1461–1462; 42 U.S.C. §§ 1306, 1395aa(a). This appeal concerns only the pre-January 31, 1973 reports.

through which state agencies annually inform the Secretary about the performance of nursing and old age homes which receive federal funds under the medicare program. The Secretary uses the reports in determining whether these health care facilities are conforming to federal standards, as they must to continue to receive federal funds.

The plaintiffs contend and the district court held that disclosure is required by the Freedom of Information Act, 5 U.S.C. § 552. However, the Secretary insists that subsection (b)(3) of section 552, coupled with section 1306(a) of Title 42, U.S.Code, makes the Act inapplicable to the reports here in question. It is agreed, and properly so, that but for subsection 552(b)(3), the Act would require the requested disclosure. Subsection (b)(3) reads:

> "(b) This section does not apply to matters that are . . . (3) specifically exempted . . . by statute; . . . ."

Section 1306(a) of Title 42 reads:

> "No disclosure of any . . . report . . . obtained at any time by the Secretary . . . or by any officer or employee of the Department . . . in the course of discharging their respective duties under this chapter [the chapter on social security] shall be made except as the Secretary . . . may by regulations prescribe."

Thus, the precise question here is whether, within the meaning of section 552(b)(3), such reports as are sought in this case are "specifically exempted from disclosure" by 42 U.S.C. § 1306(a), an enactment that antedated section 552(b)(3).

The Secretary argues that it is enough that the language of the earlier exempting statute, however general, is on its face clearly an authorization for administrative exemption of the reports in controversy. In his view, if an earlier statute gave him unrestricted discretion to exempt an undefined range of social security information from disclo-

sure, then the effect of subsection 552(b)(3) is to preserve that unfettered and unguided power. In effect, he argues that as used in subsection 552(b)(3) "specifically" does not mean "with some degree of particularity."

On the other hand, the plaintiffs argue that "matters are . . . specifically exempted from disclosure by statute" only if a statute either identifies some class or category of items that Congress considers appropriate for exemption or, at least, sets out legislatively prescribed standards of guidelines that the Secretary must follow in determining what matter shall be exempted from disclosure. We agree, as did the district court, that the exempting statute must prescribe some basis upon which the Secretary is to decide. Otherwise, there would be no escape from the unacceptable conclusion that the word "specifically," as used in section 552(b)(3), is surplusage.

Section 1306(a) was enacted as part of the Social Security Amendments of 1939, one stated general purpose of which was "to insure efficient administration and to protect recipients from humiliation and exploitation." S.Rep.No. 734, 76th Cong., 1st Sess. 29 (1939). This occurred long before the Department had any concern with surveys of or reports upon local extended care facilities, and our attention has not been directed to anything analogous to them which Congress might have had in mind. The social security information that the Secretary gathered at that time was highly personal data about social security applicants and registrants. Thus, in 1939 Congress could not have considered whether the type of information that concerns us here merited exemption from disclosure. Neither did section 1306(a) provide any standards or guides through which legislative judgment would be reflected in the making of administrative exemptions. Thus, in no meaningful sense can it be said that section 1306(a) "specifically exempted" the matters now in controversy from disclosure.

This reading of the relevant statutes is in accord with the manifest purpose of the Freedom of Information Act. As the relevant committee reports[2] make clear, Congress acted because of outspoken dissatisfaction with existing law. It was complained that the then controlling section 3 of the Administrative Procedure Act, although entitled "Public Information" and intended to increase public access to agency documents, was being used more as a sanction for withholding documents than as a mandate for disclosure. The House Committee documented recurring abuse of broad discretion which the existing law allowed officers of the executive branch, and the Senate report concurred.

In these circumstances, Congress adopted the reforming statute to enable citizens and the press to find out how their government operates.[3] Its purpose, full disclosure subject only to narrow and well-defined exemptions, is reflected in its structure as well as its history. The bulk of the Act requires every agency to make available broad categories of information. Subsection (e) (relettered (b) in U.S.C.) lists nine categories of exemptions from the Act, but subsection (f) (relettered (c)) makes it clear that the disclosure sections are to be read broadly, and the exemptions narrowly.[4] A reading of the committee reports and debates leads to a firm conviction that the absence of standards to govern broad agency discretion was the chief evil at which Congress aimed.[5]

Finally, in our judgment, Environmental Protection Agency v. Mink, 1973, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119, upon which the Secretary relies heavily, does not require a different conclusion. The *Mink* case involved a different provision of section 552, numbered (b)(1), that exempted matters "specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy; . . . ." It was sufficient for the decision of that case that the Court found that Executive Order 10501, under which the President had caused the sought documents to be classified as secret, had been specifically identified in the legislative history of the Freedom of Information Act as a valid exemption from disclosure that the Act would not alter. 410 U.S. at 82–83, 93 S.Ct. 827, 833.

For these reasons, the judgment of the district court will be affirmed.

2. S.Rep.No.813, 89th Cong., 1st Sess. (1965), reproduced in part, 111 Cong.Rec. 26821 (1965) ; H.R.Rep.No. 1497, 89th Cong., 2d Sess. (1966), reproduced, U.S.Code Cong. & Admin.News 1966, pp. 2418, 2421–23.

3. S.Rep. at 3, 5, 10.

4. S.Rep. at 10; cf., Vaughn v. Rosen, D.C. Cir. 1973, 484 F.2d 820, 823.

5. S.Rep. at 5; U.S.Code Cong. & Admin. News 1966 at p. 2422 (H.R.Rep.) ; 112 Cong.Rec. 11434 et seq. (1966).