864 F.2d 1084
 24 Soc.Sec.Rep.Ser. 227, Medicare&Medicaid Gu 37,606
SOUTH HILLS HEALTH SYSTEM, A Pennsylvania Hospital Corp. and
the Robert Packer Hospital (Guthrie Medical Center), Loch
Haven Hospital, Evangelical Community Hospital, Centre
Community Hospital, Wilkes Barre General Hospital, and
Dubois Regional Medical Center, Intervening Plaintiffs, Appellants
v.
Otis BOWEN, Secretary of Health and Human Services, and Blue
Cross of Western PA.
 No. 87-3551.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 20, 1988.
Decided Dec. 30, 1988.
 
 Roland Morris (argued), Jane Dalton Elliott, Duane, Morris & Heckscher, Philadelphia, Pa., for appellants.
 Timothy M. White (argued), Office of the General Counsel, Dept. of Health and Human Services, Washington, D.C., for appellees.
 Before HIGGINBOTHAM and BECKER, Circuit Judges, and HUYETT, District Judge.*
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This case presents the question of whether the district court improperly refused to enjoin the Secretary of the Department of Health and Human Services ("HHS") from releasing certain Medicare related hospital cost reports to persons requesting them under the Freedom of Information Act, 5 U.S.C. Sec. 552 (1983) ("FOIA"). Appellants are eight hospitals located in Pennsylvania, required by law to submit these annual cost reports to HHS's Health Care Financing Administration ("HCFA") as a condition to reimbursement for the health care services they provide to Medicare beneficiaries. The district court granted summary judgment for the Secretary. The court concluded that the disclosure rule was neither inconsistent with applicable regulations, arbitrary and capricious, nor a violation of either the Trade Secrets Act, 18 U.S.C. Sec. 1905 (1983), or the fifth amendment's guarantee of due process, since a valid HCFA regulation, 42 C.F.R. Sec. 401.135(c) (1987), requires the Secretary to release the cost reports. We agree with the district court that the disclosure regulation is not inconsistent with other agency regulations, and we find that it is authorized by law as required by the Administrative Procedure Act ("APA"). However, we find that a challenge to the regulation as arbitrary and capricious is premature at this time, as the agency has not yet had an opportunity to make a record in response to the appellants' argument that a significant change in market conditions has rendered the regulation arbitrary. Accordingly, the district court did not have jurisdiction over the arbitrariness and capriciousness challenge brought by the appellants. We will therefore affirm the decision of the district court in part, vacate it in part, and remand with instructions that the district court dismiss in accordance with this opinion.
 
 
 2
 I. The Procedural History.
 
 
 3
 Title XVIII of the Social Security Act, 42 U.S.C.A. Secs. 1395-1395xx (1983) ("the Act"), established the program of Health Insurance for the Aged and Disabled popularly known as Medicare. The Secretary of Health and Human Services ("the Secretary") administers the program through the HCFA. Hospitals that participate in the Medicare program are required, by statute and regulation, to submit annual cost reports to the HCFA. See 42 U.S.C.A. Sec. 1395g(a) (1983); 42 C.F.R. Sec. 413.20(b) (1987).[1] These reports set forth in detail the costs incurred by hospitals in providing medical services, and enable HCFA to calculate appropriate reimbursement levels for participating health care providers. Since 1975, an HCFA regulation, 42 C.F.R. Sec. 401.135(c) (1987), has made the reports available to any member of the public who requests them in writing.[2]
 
 
 4
 In July 1984, South Hills Health System ("South Hills"), which operates a hospital, a home health care agency, and a nursing home, was notified by Blue Cross of Western Pennsylvania that several hospitals had made Freedom of Information Act requests for copies of its facilities' cost reports. Blue Cross also notified South Hills that it planned to provide the information upon receipt of the reports' copying costs from the requesters. South Hills immediately wrote to Blue Cross, objecting to disclosure. It contended that the information was confidential and, as such, exempt from mandatory disclosure under the FOIA, 5 U.S.C. Sec. 552(b)(4) (1983) ("Exemption 4").[3] Moreover, it claimed that disclosing this information to its competitors would seriously jeopardize its marketplace position.
 
 
 5
 In support of the latter argument, South Hills asserted that competition in the health care marketplace had increased since the promulgation of the regulations, due in part to a change in the method of calculating Medicare reimbursement to health care providers. In 1983, as part of its general program of reducing the federal budget deficit, Congress passed the Social Security Amendments of 1983. These amendments changed the system of calculating payments to hospitals and other providers participating in the Medicare program from a system based on the providers' "reasonable costs," a payment regime based on a hospital's actual costs, to a "prospective payment system," a flat rate system. Pursuant to the change, the HCFA reimburses participating hospitals for the costs of inpatient care in accordance with a payment schedule for standard types of patient cases, called Diagnosis Related Groups. 42 U.S.C. Sec. 1395ww(d) (Supp.1985). Congress's intent in mandating this change was its desire to increase hospital cost efficiency. See Staff of the House Committee on Ways and Means, 98th Cong., 1st Sess., Social Security Act Amendments of 1983 (Comm.Print 1983), reprinted in 382 Medicare and Medicaid Guide 131, 132 (C.C.H.1983). South Hills argues that this change has caused such increased competition in the health care market as to render the disclosure regulation, 42 C.F.R. Sec. 401.135(c), "no longer viable or realistic." Appellants' Appendix ("App'ts.App.") at 26A. South Hills has continued to rely principally on this argument throughout its dealings with the HCFA and in this litigation. Since we hold only that the district court had no jurisdiction to consider an arbitrariness and capriciousness challenge to the regulation until a proper party made a 553(e) petition for reconsideration of the rule, we specifically make no finding as to the accuracy of these assertions.
 
 
 6
 Blue Cross initially replied that it was required to release the reports absent a court order to the contrary. Upon further discussion with regional HCFA officials, however, Blue Cross agreed to forward the documents to HCFA's Office of Public Affairs in Baltimore and to allow that office to review the FOIA requests and notify South Hills whether HHS would release the reports. In November 1984, HCFA's Baltimore public affairs office informed South Hills by telephone that the Medicare cost reports would be released. Shortly thereafter, South Hills representatives met with HCFA Baltimore officials, who agreed to further delay disclosure until they had re-examined the applicable regulation to determine whether release of the reports was authorized. In January 1986, HCFA's FOIA officer informed South Hills by letter that, although the agency would continue to examine its policy regarding release of Medicare cost reports, South Hills's cost reports would be released in accordance with 42 C.F.R. Sec. 401.135(c) (1987). HCFA then granted South Hills's request that it further delay the release of the cost reports so that South Hills could file an appeal from HCFA's decision.
 
 
 7
 In January 1986, South Hills filed a complaint in the United States District Court for the Western District of Pennsylvania, seeking reversal of HCFA's decision on the grounds that: (1) release under authority of 42 C.F.R. Sec. 401.135(c) would violate certain other HCFA disclosure regulations; (2) 42 C.F.R. Sec. 401.135(c) does not authorize release because it is arbitrary, capricious, and an abuse of the Secretary's discretion under the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A) (1982);[4] (3) disclosure of the cost reports would violate the Trade Secrets Act, 18 U.S.C. Sec. 1905 (1983); and (4) disclosure of its Medicare cost reports--without HCFA's individualized consideration of each requested report to determine whether release is precluded by Exemption 4--would violate South Hills's constitutional right to due process guaranteed by the fifth amendment. In addition, South Hills sought preliminary and permanent injunctions restraining the Secretary and Blue Cross of Western Pennsylvania from releasing its Medicare cost reports to any person or entity not connected with the Medicare program in an official government capacity.
 
 
 8
 The district court subsequently granted motions permitting fourteen additional hospitals to intervene as plaintiffs, and granted leave for the Hospital Association of Pennsylvania to file a brief amicus curiae in support of South Hills. With the approval of the district court, all parties stipulated that the Secretary and Blue Cross would not release the Medicare cost reports of the plaintiffs pending final judgment of the district court.
 
 
 9
 In August 1987, the district court entered an order denying the motions for summary judgment filed by South Hills and the intervening plaintiffs and granting the motions for summary judgment of the Secretary and Blue Cross. The district court found that the cost data contained in the Medicare reports was confidential commercial or financial information of the kind covered by both Exemption 4, 5 U.S.C. Sec. 552(b)(4), and the Trade Secrets Act, 18 U.S.C. Sec. 1905. South Hills v. Bowen, No. 86-178, slip op. at 7 (W.D.Pa. Aug. 6, 1987). It held, however, that 42 C.F.R. Sec. 401.135(c) did not violate any other HHS or HCFA regulation, that it properly authorized disclosure notwithstanding the cost reports' confidential nature, and that, under the altered reimbursement regime, it is neither arbitrary and capricious, nor a violation of the Trade Secrets Act. Id. at 8-9. The district court reasoned that "the advent of increased competition in the health care market pursuant to the prospective payment system, does not diminish the public's right to assure that Medicare funds are properly spent." Id. at 9. With respect to South Hills's fifth amendment claim, the district court found that disclosure of the Medicare cost reports would not constitute a deprivation of property without due process of law.
 
 
 10
 South Hills and seven of the intervening hospitals--the Robert Packer Hospital (Guthrie Medical Center), Lock Haven Hospital, Evangelical Community Hospital, Centre Community Hospital, Wilkes-Barre General Hospital, Lewistown Hospital, and DuBois Regional Medical Center--now appeal from the district court's decision.[5] In response to a motion filed by the hospitals, the district court issued an order staying any action on its order pending this appeal.
 
 
 11
 II. Legislative, Regulatory, and Judicial Background of the
 
 
 12
 Disclosure Regulation.
 
 
 13
 After the passage of the FOIA, the Secretary of Health, Education and Welfare, HHS's predecessor agency, initially denied FOIA requests for Medicare related reports. Relying on 42 U.S.C. Sec. 1306(a) of the Social Security statute,[6] which prohibits disclosure of Medicare related reports except as specifically authorized by regulation, the Secretary took the position that since he declined to publish a regulation providing for disclosure of the reports, subsection (b)(3) of the Freedom of Information Act, 5 U.S.C. Sec. 552(b)(3) (hereinafter "Exemption 3"), prohibiting disclosure of matters specifically exempted by statute, was controlling. Stretch v. Weinberger, 495 F.2d 639, 640 (3d Cir.1974).
 
 
 14
 This Court rejected the Secretary's argument and held that 42 U.S.C. Sec. 1306(a) was not a withholding statute within the meaning of Exemption 3. Id. at 639.[7] We found that Congress's intent in enacting the Social Security Act's disclosure provision was twofold: " 'to insure efficient administration and to protect recipients from humiliation and exploitation,' " id. at 640 (quoting S.Rep. No. 734, 76th Cong., 1st Sess. 29 (1939)), by shielding "highly personal data about [them]" from the public. Id. We also found that Congress did not have similar concerns about surveys or reports on extended care facilities, since at the time of the passage of legislation, the Department was itself not concerned with them. Id.[8]
 
 
 15
 Following Stretch and other adverse decisions in the courts, see, e.g., Schechter v. Weinberger, 506 F.2d 1275 (D.C.Cir.1974) (medical laboratory and hospital); Serchuk v. Weinberger, 493 F.2d 663 (5th Cir.1974); but see People of the State of California v. Weinberger, 505 F.2d 767 (9th Cir.1974), the Secretary engaged in formal rulemaking under the Administrative Procedures Act, 5 U.S.C. Sec. 553 (1982), and promulgated the regulation at issue here. In the period following its promulgation, a number of hospitals unsuccessfully challenged the rule. See Parkridge Hospital, Inc. v. Califano, 625 F.2d 719 (6th Cir.1980); Humana of Virginia v. Blue Cross of Virginia, 622 F.2d 76 (4th Cir.1980); St. Mary's Hospital, Inc. v. Harris, 604 F.2d 407 (5th Cir.1979); St. Joseph's Hospital Health Center v. Blue Cross of Central N.Y., Inc., 489 F.Supp. 1052 (N.D.N.Y.1979), aff'd, 614 F.2d 1290 (2d Cir.1979), cert. denied, 445 U.S. 962, 100 S.Ct. 1650, 64 L.Ed.2d 238 (1980); Cedars Nursing and Convalescent Center, Inc. v. Aetna Life and Casualty Co., 472 F.Supp. 296 (E.D.Pa.1979); Brookwood Medical Center, Inc. v. Califano, 470 F.Supp. 1247 (N.D.Ga.1979); Doctor's Hospital of Sarasota, Inc. v. Califano, 455 F.Supp. 476, 479 (M.D.Fla.1978).
 
 
 16
 Since these court rulings, HHS has transferred the regulation, without subsequent change, from one section of its regulations to another in accordance with its internal reorganization. 46 Fed.Reg. 55,695-55,696 (1981). Section 401.135 was initially published as part of the Social Security regulations at 20 C.F.R. Sec. 422.435 (1975). In 1981, following the Secretary of HHS's designation of the HCFA as the agency responsible for administering the Medicare program, the HCFA issued regulations separately implementing the Freedom of Information Act with respect to documents collected or produced in the administration of the Social Security Act, 42 C.F.R. Secs. 401.101-401.152 (1981), under authority of Sec. 1106 of the Social Security Act, 42 U.S.C. Sec. 1306 (1982). HCFA included among these rules, without change, the Medicare cost report release rule.
 
 
 17
 III. The Appellants' Arguments.
 
 
 18
 On this appeal, the health care providers seek a permanent injunction against disclosure of Medicare cost reports by the Secretary and Blue Cross, or in the alternative, that the Secretary be required to promulgate additional regulations that provide for case-by-case evaluation of such FOIA requests for cost reports as arise and that the Secretary be enjoined from releasing any reports until such rulemaking is completed. Our review of the district court's grant of summary judgment is plenary.
 
 
 19
 A. The Disclosure Rule is not Inconsistent with other HHS regulations.
 
 
 20
 The Hospitals argue that, in applying 42 C.F.R. Sec. 401.135(c), the Secretary is violating two other HHS regulations: 42 C.F.R. Secs. 401.105(a) and 401.126(c). The first of these requires HHS to apply the FOIA exemptions, including Exemption 4, to every proposed disclosure of information. See 42 C.F.R. Sec. 401.105(a) (1988). The second provides that requested information that falls under one of the FOIA exemptions may nevertheless be released, subject to a case-by-case determination, based on consideration of the obligation of confidentiality and the administrative necessity of disclosure. See 42 C.F.R. Sec. 401.126(c) (1988). The Hospitals argue that their Medicare cost reports are covered by Exemption 4. Consequently, they argue, the Secretary's decision to release the reports under the authority of 42 C.F.R. Sec. 401.135(c), without conducting case-by-case determinations, is inconsistent with the two HHS FOIA rules described above. This "inconsistency" or derogation of HHS's own rules, the Hospitals argue, results in the Secretary's action being arbitrary and capricious under 5 U.S.C. Sec. 706(2)(A).
 
 
 21
 The Hospitals also contend that, because the agency is "inconsistent," its determination regarding the release of their cost reports should be accorded lessened deference on this review because the agency has failed to interpret its blanket disclosure rule--which read alone is susceptible of only one meaning--in light of the two other regulations. We find, however, that there is no inconsistency between HCFA's Medicare cost report disclosure rule and its other FOIA regulations. Accordingly, we will not intrude on the Secretary's determination.
 
 1.
 
 22
 Section 401.105(a), the first rule that the Hospitals contend that the Secretary is violating, provides that:
 
 
 23
 The Freedom of Information Act rules shall be applied to every proposed disclosure of information. If, considering the circumstances of the disclosure, the information would be made available in accordance with the Freedom of Information Act rules, then the information may be disclosed regardless of whether the requester or recipient of the information has a statutory right to request the information under the Freedom of Information Act, 5 U.S.C. 552, or whether a request has been made.
 
 
 24
 42 C.F.R. Sec. 401.105(a) (1988). The Hospitals argue that this regulation was intended to protect their interests in the confidentiality of their reports and that the regulation must therefore be applied to them. In arguing for this conclusion, the Hospitals rely on the Supreme Court's statement in Chrysler Corporation v. Brown, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), that Congress's principal concern in the FOIA was for the agency's need for confidentiality and that "the FOIA by itself protects the submitters' interest in confidentiality only to the extent that this interest is endorsed by the agency collecting the information." Chrysler, 441 U.S. at 292-93, 99 S.Ct. at 1712-13. In our view, 42 C.F.R. Sec. 401.105(a) is a general regulation that does not provide the type of specific endorsement of a submitter's--here the hospitals'--interest in confidentiality envisioned by Chrysler.
 
 
 25
 In light of this conclusion, we also reject the Hospitals' contention that there is an inconsistency between 42 C.F.R. Sec. 401.105(a) and the agency's decision to release the hospital cost reports. This rule merely states that anyone seeking information from the agency, whether or not that person is entitled to make a FOIA request, and whether or not he or she calls it a FOIA request, will be treated as a person making the request under FOIA and entitled to do so under FOIA for purposes of these regulations: it grants to everyone requesting information the same minimum rights as an FOIA requester. The regulation does not bar the HCFA from deciding that some requesters--such as those seeking the disclosure of Medicare cost reports--should be granted greater rights than a FOIA requester. The regulation therefore does not preclude or supercede HCFA's mandatory disclosure rule for Medicare cost reports. Accordingly, HCFA's disclosure order, based on this regulation, does not violate the minimum, general requirement of 42 C.F.R. Sec. 401.105(a).
 
 2.
 
 26
 The Hospitals also contend that Sec. 401.126 conflicts with the disclosure regulation. That section states that:
 
 
 27
 Neither 5 U.S.C. 552 nor this regulation directs the withholding of any record or information, except to the extent of the prohibitions in paragraph (b) of this section. Except for material required to be withheld under the statutory provisions incorporated in paragraph (b) of this section or under another statute which meets the standards in 5 U.S.C. 552(b)(3), materials exempt from mandatory disclosure will nevertheless be made available when this can be done consistently with obligations of confidentiality and administrative necessity. The disclosure of materials or records under these circumstances in response to a specific request, however, is of no precedent force with respect to any other request.
 
 
 28
 42 C.F.R. Sec. 401.126(c) (1988). Again, we see no inconsistency between this regulation and the Secretary's order to release the hospitals' Medicare cost reports. This regulation provides only that materials sought will be released, even if they are exempt from mandatory disclosure, as long as a statute does not specifically prohibit their release and as long as such release is consistent with the obligations of confidentiality and administrative necessity. Paragraph (b), to which the regulation refers, lists statutorily exempted materials. The Medicare cost reports are not included.[9] We therefore read Section 401.126(c) as a requirement that certain information be released, and find that it is perfectly consistent with the existence of other subsections--such as Sec. 401.135(c)--requiring the release of additional, specified information. We conclude that this regulation, like 42 C.F.R. Sec. 401.105(a), describes minimum, general requirements for disclosure of information and that it does not preclude the Secretary from deciding to release the Medicare cost reports under a more stringent, specific regulation mandating their disclosure.
 
 
 29
 We further note that HCFA's Medicare cost report disclosure regulation is consistent with HHS's regulations, which the HCFA regulations supplement, rather than replace or restrict. See 42 C.F.R. Sec. 401.101(3) (1988). The HHS regulation implementing the FOIA is published at 45 C.F.R. Part 5. Section 5.71(c) of that regulation provides: "Except to the extent specifically otherwise provided by regulations of operating agencies, information having a commercial or financial value and in which the person providing the information has a proprietary interest will not be disclosed if it is in fact confidential." 42 C.F.R. Sec. 5.71(c)(1987) (emphasis added).
 
 
 30
 Because no regulation pointed to by the health care providers is inconsistent with 42 C.F.R. Sec. 401.135(c), we find that the Secretary did not act inconsistently with HCFA's regulations by ordering the release of the Hospitals' cost report.
 
 
 31
 B. South Hills' Argument that the Disclosure Regulation has Become Arbitrary and Capricious due to Increased Health Care Market Competition Is Not Yet Ripe for Consideration.
 
 
 32
 South Hills asserts that Medicare cost reports are covered by Exemption 4's exemption of confidential financial information. It further asserts that the Secretary's decision to release the reports is arbitrary and capricious, because the regulation that he relied on for authority to disclose that information is arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. Sec. 706(2)(A) (1982). South Hills contends that competition among hospitals, and in particular between hospitals and Health Maintenance Organizations, which do not have to file the cost reports, has intensified since the 1983 change in the Medicare reimbursement system. South Hills further maintains that in the current health care market, the revelation of a health care provider's cost data threatens its market position. South Hills further argues that the 1983 shift to the prospective payment system has diminished the public interest in disclosure of hospital cost information, because reimbursement is no longer tied to a hospital's actual costs, but instead is made pursuant to the fixed payment schedule established by HCFA's Diagnosis Related Groups. South Hills argues that, consequently, cost information is no longer a useful vehicle for public monitoring of Medicare expenditures. For that reason, it asserts, the determination that HHS made in promulgating its disclosure regulation--that the public interest served in disclosure outweighs any harm caused to health care providers by virtue of disclosure of its confidential information--is no longer reasonable and enforcement of the regulation is arbitrary, capricious, and in violation of the APA.
 
 
 33
 Relying on its argument that Sec. 401.135(c) is now arbitrary and capricious, South Hills also argues that, because Sec. 401.135(c) violates the APA, it cannot provide the authorization for release that the Trade Secrets Act, 18 U.S.C. Sec. 1905 (1982), requires. The Trade Secrets Act requires that government officials only release confidential information when "authorized by law," a requirement that South Hills argues has not been met here. South Hills acknowledges that under Sec. 1905, information otherwise shielded from disclosure by the statute may be disclosed pursuant to an agency disclosure regulation, if that regulation provides the "authoriz[ation] by law" required by the Trade Secrets Act. Chrysler, 441 U.S. at 295, 99 S.Ct. at 1714. It also concedes that several courts have held that 42 C.F.R. Sec. 401.135(c) does fulfill Chrysler's criteria for providing the requisite authorization. See, e.g. Parkridge Hospital, Inc. v. Califano, 625 F.2d 719 (6th Cir.1980). South Hills argues, however, that because "extraordinary changes ... in the health care industry since those cases were decided have rendered [Sec.] 401.135(c) invalid," South Hills Brief at 24, the regulation does not currently provide the legal sanction required by Sec. 1905 for disclosure.
 
 
 34
 The district court rejected South Hills's argument that the current conditions of the health care market have rendered 42 C.F.R. Sec. 401.135(c) arbitrary and capricious. While we find that South Hills may legitimately bring an arbitrariness and capriciousness challenge to the legislation, we hold that under the circumstances of this case, the district court lacked jurisdiction to determine whether the regulation is arbitrary and capricious.
 
 
 35
 1. South Hills' Assertion That the Regulation is Arbitrary and Capricious is not Ripe at This Time.
 
 
 36
 South Hills may legitimately attack 42 C.F.R. Sec. 401.135(c) for being arbitrary and capricious under the APA. We see no rationale in the APA that would preclude a challenge to disclosure regulations on the grounds that they were arbitrary and capricious. See Chrysler, 441 U.S. at 308, 99 S.Ct. at 1720 (so indicating). Indeed, several appellate courts adjudicating the earlier series of challenges to HHS's cost report disclosure rule assumed that even a disclosure regulation that meets the Chrysler criteria of being "authorized by law" within the meaning of the Trade Secrets Act, and that is therefore "in accordance with law" within the meaning of 5 U.S.C. Sec. 706(2)(A), may nevertheless run afoul of the APA because it is "arbitrary, capricious, [and] an abuse of discretion," 5 U.S.C. Sec. 706(2)(A) (1982). Parkridge Hospital, Inc. v. Califano, 625 F.2d 719, 725 (6th Cir.1980); Humana of Virginia v. Blue Cross of Virginia, 622 F.2d 76, 79-80 (4th Cir.1980); St. Mary's Hospital, Inc. v. Harris, 604 F.2d 407, 410 (5th Cir.1979); St. Joseph's Hospital Health Center v. Blue Cross of Central New York, Inc., 489 F.Supp. 1052, 1062 (N.D.N.Y.1979), aff'd mem, 614 F.2d 1290 (1st Cir.1979), cert. denied, 445 U.S. 962, 100 S.Ct. 1650, 64 L.Ed.2d 238 (1980).
 
 
 37
 However, the district court was without jurisdiction to consider such a challenge at this time. The reason is simple: There is no agency record for the court to review. Under Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), courts review agency decisions by evaluating whether the agency's record provides substantial support for the decision that has been reached. In the present case, the only existing agency record concerning the rule is that created by HHS when the regulation was promulgated. But South Hills does not argue that the rule was invalid when promulgated, which was prior to the change from a cost-based reimbursement system to a diagnosis-based reimbursement system. It does not challenge the Secretary's reasoning at the time of promulgation that the regulation would result in no deleterious impact on hospital competition or the country's health care.
 
 
 38
 Since South Hills concedes that the disclosure regulation had the force of law when promulgated, and does not argue that there was an improper adjudication in its case, all that remains of its contention is that this validly promulgated agency regulation should be repealed on the grounds that supervening changes have rendered it arbitrary and capricious. South Hills is in effect arguing that at some point after the Congress legislated, and HCFA adopted regulations concerning, the new system of Medicare reimbursement, the blanket disclosure rule ceased to be a rational method of handling FOIA requests for Medicare cost reports, because the harm caused to the providers by their release was greater than the public interest in disclosure. South Hills is implicitly contending that at that point, HCFA should have rescinded the regulation and either adopted a new regulation exempting all Medicare cost reports from disclosure, or at a minimum, established a case-by-case determination of whether to withhold, according to the same procedures established by the agency for handling other materials covered by Exemption 4. The Secretary having failed to exercise his discretion in this manner, South Hills is asking this Court to require him to do so.
 
 
 39
 The principal case relied on in support of this argument is Geller v. FCC, 610 F.2d 973 (D.C.Cir.1979), which, the providers assert, stands for the proposition that where the predicate for a regulation is removed, the agency's failure to repeal the rule is arbitrary and capricious.
 
 
 40
 South Hills has standing to assert this claim under Sec. 4(e) of the Administrative Procedure Act, which states that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. Sec. 553(e) (1982). Courts have held that persons believing themselves aggrieved by a longstanding regulation are under certain circumstances not limited to the time period prescribed by the authorizing statute for challenging the regulation. See Geller v. FCC, 610 F.2d 973, 977 (1979); Investment Co. Inst. v. Board of Governors of the Federal Reserve System, 551 F.2d 1270, 1280-81 (D.C.Cir.1977).
 
 
 41
 Geller provides a clear example of the nature of such challenges. Although direct judicial review of Federal Communications Commission orders could only validly be sought within sixty days of the orders' promulgation, Geller successfully challenged such an order collaterally five years later. See Geller, 610 F.2d at 977. The order had adopted an industry compromise, parts of which were concededly not in the public interest, in order to facilitate the passage of new copyright legislation that was to define better the respective rights of the broadcasting and cable television industries. Once this legislation had been passed, the agency's order had served its stated purpose and so the agency could not validly deny Geller's petition to the agency to reexamine its order and repeal those portions that were not in the public interest.
 
 
 42
 Like Geller, South Hills challenges an agency decision, based not on the circumstances that the agency considered in promulgating its rule, but rather on subsequent events, here increased market competition that is allegedly a product of Congress's change in the Medicare reimbursement scheme. Like Geller, South Hills could not make a direct challenge to the agency regulation, as the agency record is no longer open for consideration of new facts, and South Hills does not contest this fact. The record in the informal agency action during which this disclosure regulation was promulgated was closed at the time the Secretary ended the notice and comment period. Since the record is closed, South Hills' attack on the regulation is untimely, unless it can demonstrate that circumstances have so changed since the rule-making that the original reasons for promulgating the regulation no longer exist or some equally compelling reason.
 
 
 43
 Such second generation challenges to agency regulations are permitted out of necessity. "[U]nlike ordinary adjudicative orders, administrative rules and regulations are capable of continuing application; limiting the right of review of the underlying rule would effectively deny many parties ultimately affected by a rule an opportunity to question its validity." Functional Music, Inc. v. FCC, 274 F.2d 543, 546 (D.C.Cir.1958), cert. denied, 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959). Even where the challenging party participated in the original rulemaking proceeding, as in Geller, the events and circumstances that made the rule necessary may have disappeared, and with them the rationale for the regulation.
 
 
 44
 Normally, however, an agency may exercise "a generous measure of discretion respecting the launching of rulemaking proceedings," Geller, 610 F.2d at 979. If this were not so, the statutory limits on judicial review of administrative rules would be undermined by the second generation exception, in violation of the structure of our government, which requires that agencies administer statutes, so long as they do it within the bounds of the Administrative Procedure Act and the intent of Congress. The health care providers are at liberty at any time to seek congressional action to repeal the statutory authorization for the HCFA regulation, or to seek amendment of the regulation to make it more compatible with present circumstances.
 
 
 45
 In this case, however, the question of whether the agency properly exercised its discretion is not properly before us. As this Court stated in Consolidation Coal Co. v. Donovan, 656 F.2d 910 (3d Cir.1981), "the rule of Geller has been applied only when the agency has finally acted to deny the petition for reconsideration or further rulemaking ...". Id. at 915 (emphasis added). The threshold obstacle to our consideration of South Hills' argument in this case is that it has not filed a Sec. 553(e) petition for rulemaking with the Secretary. We have examined South Hills' complaint to the district court and find that it is not a petition for review of an order by HHS refusing to reexamine the continuing validity of HCFA's Medicare cost report disclosure rule, see Geller, 610 F.2d at 978, nor is it an appeal from a denial of a petition to eliminate specific regulations on demonstrable grounds of invalidity, see Geller, 610 F.2d at 978 (citing Functional Music ). Instead, South Hills's complaint states that it is appealing from a final agency decision by the Secretary to release its cost reports under the regulation. Nothing in the record indicates that the intervening providers have made any request related to rulemaking to the Secretary.[10]
 
 
 46
 Because a threshold requirement of seeking judicial review of an agency's refusal to undertake rulemaking is the filing of a rulemaking petition with the relevant agency, and because none of the appellants in this case have filed such a petition, we hold that the district court lacked jurisdiction to review the Secretary's enforcement of Sec. 401.135(c).
 
 
 47
 C. Appellants' Constitutional Arguments.
 
 
 48
 Finally, the appellants make constitutional arguments, which we find to be without merit. First, South Hills argues that as a consequence of the inconsistency between the disclosure regulation and FOIA's Exemption 4, the blanket disclosure rule for Medicare cost reports violates the due process clause of the fifth amendment to the constitution. The Hospitals argue that their property interest in commercial and financial information about their own institution and business affairs has been recognized and protected by Congress in FOIA's exemption 4, which HCFA has adopted in its regulations. These regulations, according to appellants, provide for disclosure of FOIA-exempted information only after consideration of certain enumerated factors. See 42 C.F.R. Sec. 401.126 (1988). The Hospitals further argue that, having recognized a property interest in the Medicare cost reports and having established procedures for its protections, the Secretary is in derogation of his constitutional obligation to provide equal process when he does not follow these established procedures in each instance of a request for a Medicare cost report. Appellants therefore assert that the Secretary's decision ordering release of their reports deprived them of property without due process of law. Relying on Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), appellants seek reversal of the agency's disclosure order and a remand of the case to the Secretary with instructions that he grant the hospitals the process they argue is due to them--an individualized hearing and a reconsideration of the regulation in light of changed circumstances.
 
 
 49
 Appellants have cited no authority to support their claim that they have a property interest in the information in their cost reports, and, as the property interest has not been demonstrated, we decline to reach the subsequent question of whether they have been granted sufficient process in the taking of this asserted property right.
 
 
 50
 Next, appellants argue that 42 C.F.R. Sec. 401.126(c) requires the agency to consider its obligation of confidentiality before releasing a Medicare cost report to a requestor, and that the Secretary, by failing to conduct the required inquiry, deprived the hospitals of due process of law. This argument fails because, as we have stated, nothing in the regulation cited by the hospitals prohibits the disclosure of Medicare cost reports pursuant to Sec. 401.135(c).
 
 
 51
 IV. Conclusion.
 
 
 52
 For the foregoing reasons, we will affirm the judgment of the district court that 42 C.F.R. Sec. 401.135(c) is not inconsistent with other applicable regulations and that its application does not violate the due process clause of the constitution. We find that the question of whether the regulation is arbitrary and capricious was not properly before the district court. Accordingly, to the extent that the district court's order includes a holding that evaluates the regulation under that standard, it is vacated and this matter is remanded for dismissal.
 
 
 
 *
 Honorable Daniel H. Huyett, 3rd, United States District Judge, sitting by designation
 
 
 [1]
 The HCFA actually obtains the information indirectly, through fiscal intermediaries. 42 C.F.R. Sec. 413.20 (1987). The providers in this case submit annual reports to Blue Cross of Western Pennsylvania, which has custody of the reports at issue, and was named as a defendant in this case. As the Secretary of Health and Human Services is the only real defendant in interest, however, it is the only defendant to have filed briefs. See 42 C.F.R. Sec. 421.5(b) (1983)
 
 
 [2]
 The regulation states:
 Sec. 401.135 Release of Medicare information to the public.
 The following shall be made available to the public under the conditions specified:
 * * *
 (c) Upon request in writing, cost reports submitted by the providers of services pursuant to section 1815 of the [Social Security] Act to enable the Secretary to determine amounts due to providers.
 
 
 [42]
 C.F.R. Sec. 401.135 (1975)
 
 
 [3]
 Under this provision, "trade secrets and commercial or financial information obtained from a person and privileged or confidential" are exempt from mandatory disclosure to FOIA requesters. 5 U.S.C. Sec. 552(b)(4) (1983)
 
 
 [4]
 This statute provides for judicial review of administrative actions, and in relevant part states:
 Sec. 706. Scope of review
 To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
 * * *
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,
 5 U.S.C. Sec. 706 (1983).
 
 
 [5]
 Five other intervening hospitals, Nesbitt Memorial Hospital, Pocono Hospital, St. Joseph's Hospital, and Divine Providence Hospital, and Lewistown Hospital, initially joined the appeal but have withdrawn
 
 
 [6]
 This provision states, in pertinent part:
 Sec. 1306. Disclosure of information in possession of Department of Health and Human Services ...
 (a) Disclosure prohibited; exceptions
 No disclosure of any ... report ... obtained at any time by the Secretary ... or by any officer or employee of the Department ... in the course of discharging their respective duties under this chapter ... shall be made except as the Secretary ... may by regulations prescribe.
 42 U.S.C. Sec. 1306(a) (1983).
 
 
 [7]
 Stretch concerned extended care facility survey reports that informed the Secretary about the performance of nursing and old age homes. Our reasoning in that case, however, is also applicable to hospital reports
 
 
 [8]
 Moreover, we reasoned that Sec. 1306(a) could not be an Exemption 3 withholding statute since it provides no "standards or guides through which legislative judgment would be reflected in the making of administrative exemptions." Stretch, 495 F.2d at 640. After our ruling in Stretch, the Congress amended 5 U.S.C. Sec. 553(b)(3) to explicitly exclude as exempting statutes those statutes that permit wholly discretionary withholding of requested information. The final Conference Committee Report expressed agreement with our view that 42 U.S.C. Sec. 1306(a) does not fall within Exemption 3. See H.R.Rep. No. 1441 (Conf.), 94th Cong., 2d Sess. 25-26, reprinted in 1976 U.S.Code Cong. & Admin.News 2183, 2244, 2260-2261
 
 
 [9]
 This regulation provides that the following materials are exempt from disclosure by statute and should not be disclosed:
 ... (b)(1) Reports described in sections 1106(d) and (e) of the Social Security Act shall not be disclosed, except in accordance with the provisions of sections 1106(d) and (e). Sections 1106(d) and (e) provide for public inspection of certain official reports dealing with the operation of the health programs established by titles XVIII and XIX of the Social Security Act (Medicare and Medicaid), but require that program validation survey reports and other formal evaluations of providers of services shall not identify individual patients, individual health care practitioners, or other individuals. Section 1106(e) further requires that none of the reports shall be made public until the contractor or provider whose performance is being evaluated has had a reasonable opportunity to review that report and to offer comments. See Sec. 401.133(b) and (c);
 (2) Disclosure of materials described in section 1865(a)(2) of the Social Security Act as amended, is prohibited. Section 1865(a)(2) provides for release by the Joint Commission on the Accreditation of Hospitals (JCAH) to the Secretary (or a State agency designated by him) on a confidential basis accreditation surveys made by JCAH, if the hospitals authorize such release. Materials which are confidential under this provision include accreditation letters and accompanying Recommendations and Comments prepared by the JCAH concerning hospitals surveyed by it; and
 (3) Tax returns and return information defined in section 6103 of the Internal Revenue Code, as amended by the Tax Reform Act of 1976, shall not be disclosed except as authorized by the Internal Revenue Code.
 (c) Effect of exemption. Neither 5 U.S.C. 552 nor this regulation directs the withholding of any record or information, except to the extent of the prohibitions in paragraph (b) of this section. Except for material required to be withheld under the statutory provisions incorporated in paragraph (b) of this section or under another statute which meets the standards in 5 U.S.C. 552(b)(3), materials exempt from mandatory disclosure will nevertheless be made available when this can be done consistently with obligations of confidentiality and administrative necessity. The disclosure of materials or records under these circumstances in response to a specific request, however, is of no precedent force with respect to any other request.
 
 
 [42]
 C.F.R. Sec. 401.126(b) (1988)
 
 
 [10]
 We have also considered whether we should treat, sua sponte, South Hills' request to the HCFA to reevaluate the FOIA regulations in the context of making a decision about whether to release South Hills's cost reports, discussed at Appellant's Appendix at 59A, as a 553(e) request for a reconsideration of a rule. We find that South Hills' request was too situation specific and too informal to constitute a 553(e) request. There is no record in this case of any communication between the intervening hospitals and the HCFA, much less any record of a rulemaking petition filed by any one of the interveners with the Secretary